THOMAS ROSS ET AL. v. MCELWANE MINER ET AL.

*Fraudulent sale—Evidence—Proof of subsequent acts.*

In order to avoid a sale as fraudulent, the fraud must have existed when the property was sold; but it is quite possible to establish such fraud by proof of *subsequent* acts throwing light on the transaction and what was done *before* the sale assailed as fraudulent.

Error to Wayne. (Howell, J., presiding.) Argued November 11, 1886. Decided January 13, 1887.

Assumpsit. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Albert J. Chapman,* for appellants.

*Corliss, Andrus & Leete,* for defendants.

CAMPBELL, C. J.    Plaintiffs replevied from defendants certain teas sold October 16, and November 24, 1884, to the firm of Kirby, Miner & Agnew, the replevy being based on the alleged fraudulent character of the purchase, which plaintiffs claimed a right to rescind, inasmuch as no *bona fide* purchaser had in the meantime obtained rights.

The court below, holding that the fraud must have existed at the time of the sale, shut out testimony of some subsequent dealings and admissions as not tending to prove such fraud.

The court also, after request to make special findings of fact and law, made only very general findings, and made no findings of law.

A brief statement of the facts supposed to throw light on the controversy, as proved or sought to be proved, will be sufficient.

Prior to October, 1884, defendants Miner and Agnew had

been in business at Corunna, in Shiawassee county. In the beginning of that month they started in business at Detroit, in partnership with Alexander L. Kirby, as a firm of Kirby, Miner & Agnew, for the sale of teas and other grocery articles of a similar character. The partners were to put in $2,500 in equal amounts, which was not completely done. On the fourth of December, 1884, the firm dissolved, and Miner and Agnew agreed to pay all the debts. On the third of December a chattel mortgage was made to Benjamin Miner and Mary E. Agnew, of Corunna, for $1,600, which was, on the next day, December 4, discharged of record, and declared satisfied. This transaction is not explained, and is claimed to have been a fraud. On the eleventh of December a chattel mortgage covering the personal property and entire assets of the firm was made to Albert T. Nichols, of Corunna, for $2,201, to secure several notes aggregating that amount; the first, for $400, being dated September 26, 1884, at 3 months; one October 7, 1884, at 90 days, for $150; one October 9, 1884, at 60 days, for $1,150, marked "Duplicate;" one December 2, 1884, at 30 days, for $200; one December 5, 1884, at 30 days, for $101; and one December 10, 1884, at 90 days, for $200.

On the same day, December 11, 1884, a general assignment was made to Frank D. Andrus. There is nothing in the findings to show whether these were in fact simultaneous. It is claimed that the chattel mortgage was given at the same time to create a fraudulent preference. No testimony was given to show the existence or good faith of the Nichols claim, and the testimony indicated that the assets mortgaged left nothing over for the assignment to cover. Nichols was declared a preferred security holder, and will absorb all the assets, if successful.

It does not appear that any false representations in *fact*, or any representations at all, were made when plaintiffs sold the teas. Kirby bought them, and says that no representations

were made to him when he went into the firm; but he supposed all was as it should be, and never knew of the Nichols or other claims.    The case, therefore, does not stand on positive representations.

The *only* question seems to be whether fraudulent intent can be shown by the general history of the transactions of Miner and Agnew, subsequent as well as previous to the sale.

It appears, in fact, that, without Kirby's knowledge, if the Nichols claim is a real one, Miner and Agnew, during the existence of the firm, created undisclosed liabilities to a large extent in their joint name to Nichols, and that just before the dissolution they gave a firm chattel mortgage on all the firm property to persons who bear the same name for $1,600, which was not a firm debt, and was released when Kirby went out the next day, and is claimed to have been entirely fraudulent; that, instead of carrying out the dissolution agreement, and paying the firm debts, they applied the whole of the assets towards paying their own obligations, if they were obligations, and misappropriating assets entirely, if they were not, and made an assignment when there was practically nothing left to assign.

We are not prepared to say that it was not competent to show all these transactions, with a view of establishing that their whole Detroit business was a dishonest scheme.    If it was, then the purchases made in pursuance of it would be affected by the same fraudulent conspiracy.    The rulings of the court below rendered it unnecessary for defendants to explain their dealings, which they might, perhaps, have done. But we think there was an assumption that went too far in favor of them.    It is unquestionably true that fraud must have existed when the teas were sold, in order to avoid the sales.    But it is quite possible that fraud can be made out by proof of subsequent acts throwing light on what was done before the dealings assailed.[1]

---

[1]See *Ross v. Miner*, 35 N. W. Rep. 60.

The witness Smith, who sold the teas, testifies that, when he heard of the mortgage of December 3, he saw Miner and Agnew, and had a conversation, in which they told him they had no other indebtedness than this mortgage, which had been canceled. This testimony the court struck out as not bearing on the facts existing at the time of the sale, and, by the form of the ruling, shut out all subsequent acts as irrelevant and not competent.

The immediate tendency of this testimony was to prevent any action by plaintiffs to protect themselves, as they might have done, against fraudulent disposal of assets. It was untrue, if the Nichols debt existed. And we think that, in connection with the recent chattel mortgage, if that was unfounded, and with the other series of undisclosed notes, which, if known, would have put an end to any means of credit, these matters might have been coupled with the other facts without impropriety.

The court below evidently considered that fraud could not be made out by the assistance of subsequent doings, and must have been confined to misrepresentations made at or before the sale. Having made this ruling, it must be assumed his ultimate conclusion was based on it, and we cannot conclude that other testimony might not have changed the result, or that no prejudice could result from the failure to find more specifically the facts and law, which plaintiffs had requested.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.