ELIZABETH A. BURRILL v. WILLIAM KIMBELL, SHERIFF OF NEWAYGO COUNTY.

*Fraudulent conveyances—Evidence.*

On the trial of a replevin suit involving the validity of a sale of personal property by an insolvent debtor to his mother, it appeared that just prior to the sale the son sold a quantity of shingles, and received as part payment the notes of the purchaser, a part of which had been paid. The attaching creditor then offered to show that a confidential agent of the mother had the notes at time of such payment, and to trace the payments to the mother through such agent.

*Held,* that the testimony should have been received.

Error to Newaygo. (Fuller, J.) Argued February 9, 1887. Decided February 15, 1887.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*W. D. Fuller,* for appellant.

*D. E. Corbitt,* for plaintiff.

CHAMPLIN, J. The plaintiff brought replevin to recover possession of a horse, buggy, and harness. The defendant, as sheriff of Newaygo county, seized the property by virtue of a writ of attachment issued out of the circuit court for the county of Newaygo at the suit of one Jane M. Roedel against the goods and chattels of Edward C. Burrill. On the trial the plaintiff claimed that Edward C. Burrill, who was her son, was indebted to her in the sum of $4,113.38. Edward C. had for some time been carrying on a shingle-mill near the village of White Cloud, Newaygo county. He continued business until about the twentieth or twenty-first of

September, 1884, when he failed and suspended operations. He was indebted to his workmen and several other persons to quite an amount, and, among others, to the plaintiff in the attachment suit.        :

On the twenty-ninth of September, 1884, Edward C. Burrill executed a bill of sale of his shingle-mill, horses, wagons, trucks, sleighs, blacksmith tools, oxen, lumbering outfit, and camp equipage to his mother, to pay her, as she testified on the trial of this cause, this debt he owed her. The value of this property, as shown upon the trial, exceeded $4,500. The bill of sale included the property in question in this suit. The bill of sale from the son to his mother was attacked by the defendant as fraudulent as against the creditors of Edward C. Burrill. It was shown that he was insolvent when he made the bill of sale, and defendant showed that just prior to the execution thereof, and on the nineteenth day of September, Miles Standish purchased $2,100 worth of shingles of him, and paid him partly in drafts and currency and gave him his notes for $1,300.

He also showed that one J. H. Tatem acted as her agent and confidential adviser in the transaction of her business; also that Standish had paid and taken up a part of the notes. Defendant's counsel then asked the witness Standish: "Do you know who claimed to own those notes at the time you paid them?" and the question was objected to by plaintiff's counsel. The counsel for the defendant thereupon offered to show that J. H. Tatem, the agent and attorney for plaintiff, had the notes, and to trace the payments to the plaintiff through him. The court excluded the testimony.

I think the testimony should have been admitted. The issue involved a charge of fraud, and in such cases a wide latitude of inquiry into transactions between the parties charged is admissible. Fraud is generally proved by the introduction in evidence of facts and circumstances which lead the mind irresistibly to the conclusion that it has been

committed. In this case, here were the creditors upon one side, and the mother of their debtor upon the other. She had sworn that she also was a creditor of her son; that he owed her $4,113.38; and that she "took the bill of sale to save herself," and "that she took this property in payment of her debt." Her husband testified to the value of the property which she took, and it appears that it amounted to some $500 more than the indebtedness of her son to her. Now, the proposition was to show that, upon the day prior to the time the son ceased to do business at his mill, namely, on the nineteenth of September, he made a large sale of shingles for cash, drafts, and notes, and that he placed notes, to the amount of $1,300, in the hands of his mother, and a few days thereafter he executed to his mother the bill of sale under which she claims title to the property in dispute. I think it was competent to do so. It would, unless satisfactorily explained by her, bear directly upon her good faith in the purchase. If she was secreting for her son his property from his creditors, it was proper for defendant to show it.

She undertook to show the consideration for the purchase price of the property embraced in the bill of sale under which she claimed, which, as she testified, was the indebtedness of her son to her. If she had, just prior to that, and after her son's failure, received $1,300 from him, it is fair to presume it was on account of the son's indebtedness to her, and, if that was so, her son did not owe her anywhere near the amount testified to by her when she took the bill of sale, and the difference in value would have been so great as to constitute a badge of fraud. I have no doubt that the defendant had a right to make the proof which was offered, and to go fully into the transactions between plaintiff and her son with reference to any property which the son had owned, and their dealings respecting it, before, at, or after the failure, which had any bearing upon the question in issue. *Ross v. Miner*, 64 Mich. 204.

I think the judgment should be reversed, and a new trial granted.

The other Justices concurred.