# JUNE TERM, 1894.*

THOMAS ROSS AND ROBERT W. ANDERSON v. MCELWANE
MINER ET AL.

[See 64 Mich. 204; 67 Id. 410.]

*Sale—Rescission for fraud—Insolvency—Instructions to jury.*

1. It is not the rule that every purchase made by a merchant whose liabilities are equal to, or even in excess of, his assets, is presumptively fraudulent, or that a purchase under such circumstances will even justify an inference that the purchaser had a preconceived purpose not to pay for the goods so purchased.[1]

2. Where, in replevin for goods sold on credit, the testimony tends to show that the defendant firm had, up to the time of the purchase, paid all of its obligations at maturity; that its assets were equal to, if not in excess of, its liabilities; and that it was expected that one of the partners, who had just been taken into the firm, would contribute an amount in cash equal to one-third of the capital,—the plaintiffs are not entitled to an instruction that a condition of absolute insolvency existed.

3. The undisputed facts set forth in the opinion are held to rebut the inference, drawn from the records on the former hearings, that the mortgage complained of was given to secure an indebtedness of the old firm of Miner & Agnew, and not to justify an inference that said mortgage was a part of a preconceived scheme to get credit, buy goods, and then absorb them in payment of an old indebtedness, to the exclusion of the creditors of the new firm.

---

*Continued from Vol. 100.

[1] Fraud in obtaining credit, including purchases with intent not to pay for them, is the subject of annotation to *Childs v. Merrill* (Vt.), 14 L. R. A. 264.

Error to Wayne.   (Gartner, J.)  · Argued April 5, 1894. Decided June 16, 1894.

Replevin.   Plaintiff brings error.   Affirmed.   The facts are stated in the opinion, and in the former reports of the case.

*Albert J. Chapman,* for appellants.                     ᶜ

*Corliss, Andrus & Leete,* for defendants.

MCGRATH, C. J.   This case is here for the third time. 64 Mich. 204; 67 Id. 410.   When here upon the first appeal, it was held that, in order to avoid the sale as fraudulent, the fraud must have existed at the time of the sale, and that such fraud might be established by proof of subsequent acts throwing light upon what was done before the sale.   The court has now permitted plaintiffs to go fully into the general history of the transaction before the sale, as well as subsequent thereto, and instructed the jury that neither the assignee nor the mortgagee was a *bona fide* purchaser, and that, if Kirby, Miner & Agnew purchased the goods intending not to pay for them, plaintiffs were entitled to a verdict, and a verdict was found for defendants.

Error is assigned upon the rejection of the testimony of one Smith, plaintiffs' agent, who sold the goods to defendants, as to his knowledge of the existence of the indebtedness to Nichols.   It appears, however, that the witness afterwards testified that he first learned of the existence of that indebtedness at the time of the dissolution of the firm.

It is insisted by appellants that if, at the time the goods were ordered, defendants were actually insolvent, and concealed their condition from plaintiffs, such conduct operated as a fraud upon plaintiffs, which defendants must be pre-

sumed to have intended. The requests, however, which were presented by plaintiffs upon that subject, took the question of the insolvency of the firm from the jury. There was testimony tending to show that the firm had, at the time of the purchase, paid all of their obligations at maturity; that their assets were at least equal to, if they did not exceed, their liabilities; and that 'it was expected that Kirby would contribute an amount in cash equal to one-third share of the capital. Upon this record, plaintiffs were not entitled to an instruction that a condition of absolute insolvency existed. It is not the rule that every purchase made by a merchant whose liabilities are equal to his assets, or even in excess thereof, is presumptively fraudulent, or that a purchase under such circumstances would even justify an inference that the purchaser had a preconceived purpose not to pay for the goods so purchased. The jury must not only find a condition of insolvency, but, from all the facts and circumstances, must also find that there was an intent not to pay for the goods purchased. *Shipman v. Seymour*, 40 Mich. 274.

Plaintiffs further insist that the creditors of the firm of Kirby, Miner & Agnew were entitled to priority over the creditors of Miner & Agnew; that the assignment of Kirby's interest to Miner & Agnew, and the latter's assumption of the firm's indebtedness, made the latter trustees for the creditors of Kirby, Miner & Agnew; and that the mortgage to Nichols was a violation of the trust, and a fraud upon plaintiffs. That fraud, unless shown to have been a part of the preconceived scheme, cannot be available to plaintiffs in this action, which is replevin, based upon an alleged fraud perpetrated at the time of the purchase of the goods.

The case was last here upon the trial court's direction of a verdict for defendants. The record, as then presented, cast some doubt upon the validity of the mortgage

given to Nichols, and it further appeared that the mortgage was given to secure an old indebtedness of the firm of Miner & Agnew. It now appears, however, that Miner & Agnew had been in business at Corunna; that they were induced to go to Detroit by Kirby; that Kirby was to furnish sufficient capital to equal the investment of each of the other members; that, before leaving Corunna, Miner & Agnew had borrowed $400 from Nichols, the most, if not all, of which was used to buy stock which actually went into the new business; that Miner & Agnew took with them, to Detroit, merchandise of the value of at least $1,600, and they had at that time accounts due them from the old business, amounting to between $700 and $1,000; that after going to Detroit, and before the purchase from plaintiffs, they borrowed from Nichols, on their own account, further sums, aggregating $1,300, and put that amount into the new business; that Kirby failed to make good his share of the capital, having advanced but $300, and Miner & Agnew became suspicious of him; that, to secure the parties who had indorsed the notes held by Nichols, Miner & Agnew executed a mortgage, which was discharged after the purchase of Kirby's interest had been agreed upon; that, as a result of their differences, Miner & Agnew bought out Kirby, and refunded to him the amount of his investment; that, in order to pay Kirby and make further additions to the stock, Miner & Agnew borrowed from Nichols further sums, aggregating $500; that several hundred dollars of the amount borrowed from Nichols went into the store fixtures; that the business at Detroit did not meet expectations; that Nichols went to Detroit, examined into the condition of the firm, was dissatisfied with the outlook, and demanded security, and the firm, as it then existed, executed to him the chattel mortgage in question. These undisputed facts repel the inference, which was drawn from the former records, that the

mortgage was given to secure an indebtedness of the old firm, and they do not justify an inference that the mortgage was a part of an alleged preconceived scheme to get credit, buy goods, and then absorb the goods in payment of an old indebtedness, to the exclusion of the claims of the creditors of Kirby, Miner & Agnew.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.