(The Commonwealth *v.* Rees.)

---

*[PHILADELPHIA, JANUARY 22, 1838.]　　　　[*124]

## THE COMMONWEALTH *against* REES.

### IN ERROR.

1. Where an assignment was made by a sheriff of a replevin bond, to the defendant in the replevin, who brought suit against the obligors and obtained judgment by confession against one of them, who was an inhabitant of another state, it was *held*, that the remedy against the sheriff was suspended during the continuance of the proceedings upon the bond; and that a suit could not be maintained against him after such assignment, without judicial evidence of the insolvency of the obligors.
2. The mere taking an assignment of a replevin bond does not discharge the sheriff.

UPON the return of a writ of error to the District Court for the City and County of Philadelphia, it appeared that a *scire facias* issued from that Court at the suit of the Commonwealth, to the use of Charles Roberts and Samuel Garrigues, against George Rees and others, upon the official recognizance by Rees as sheriff, and the other defendants as his sureties. The breach alleged was that the sheriff had taken insufficient pledges in replevin.

By agreement of the counsel a case was stated for the opinion of the Court below, to be considered in the nature of a special verdict, as follows :—

"Charles Roberts and Samuel Garrigues as bailiffs of Persifor Frazer, distrained on the goods of Rachel Purdon for rent due the said Frazer on the 1st December, 1831, amounting to $355.

The said Rachel Purdon brought replevin in the said Court to March term, 1832, No. 5, on which the goods distrained were delivered to her by the sheriff.

The replevin bond is dated December 7th, 1831, and the sureties in the bond were Rachel Purdon and Joseph R. Purdon.

By agreement filed March 22d, 1832, judgment was confessed for the defendants in replevin, as on a verdict finding the amount

(The Commonwealth *v.* Rees.)

of rent due to be three hundred and fifty-five dollars, and the value of the goods distrained to have been at the time of the replevin, four hundred dollars; with stay of execution until the 1st of June, 1832.

A *retorno habendo,* issued to September term, 1832, which was returned "*eloigned.*"

[*125]    *On the 21st day of February, 1833, the said Charles Roberts and Samuel P. Garrigues took from the sheriff an assignment of the replevin bond.

The said Charles Roberts and Samuel P. Garrigues brought an action of debt to the use of Persifor Frazer, in the District Court for the City and County of Philadelphia, on the said bond, against the said Rachel Purdon and Joseph R. Purdon, to March term, 1833, No. 623, which was returned by the sheriff "*Summoned,*" as to Rachel Purdon, and "*Nil habet,*" as to Joseph Purdon.

On the 27th May, 1833, this *scire facias* issued against the sheriff.

On the 22d July, 1833, the above action of debt was discontinued, and costs paid by the plaintiff's attorney.

On the 22d July, 1833, the same plaintiffs instituted a suit by *capias,* to September term, 1833, No. 269, in the said court, against Richard Purdon and Joseph R. Purdon, in which service of the writ was accepted by John Purdon, Esq. for the defendants.

In this suit judgment was entered on the 30th April, 1834, for the plaintiffs, against Joseph R. Purdon, for $400 68, as on an award of arbitrators filed the 15th April, 1834.

The said Joseph R. Purdon, at the time of the return of the replevin aforesaid, was, and now is, a resident of New Orleans.

The question intended to be raised is, whether the plaintiffs, having taken an assignment of the replevin bond from the sheriff, are precluded by that act, and their subsequent proceedings aforesaid, from recovering in this action?

If the Court are of opinion that they are precluded, then judgment to be entered for the defendants.

If they are of the contrary opinion, then judgment to be entered for the plaintiffs."

The District Court ordered judgment to be entered upon this case, for the defendants;* to reverse which this writ of error was brought.

Mr. *M'Call* and Mr. *Williams* for the plaintiffs in error. The statute of Westminster was passed for the benefit of the landlord, and requires sufficient pledges to be taken for the return of the

* See Miles's Reports, 330, *Commonwealth* v. *Rees.*

(The Commonwealth v. Rees.)

goods. If the sheriff take insufficient pledges, he is liable as if he had not taken any; and an action lies against him without first resorting to the sureties. The remedies on the replevin bond, and against the *sheriff, are concurrent, and nothing but payment by one will discharge the other. [*126] There is no analogy between the case of a replevin bond and a bail bond. This is not a case of election, and there is no reason why the landlord in this case should be sent to New Orleans, to exhaust the process of the law in attempts to recover from the surety there. This would increase the costs without any benefit to the sheriff. The defendant has no cause of complaint. He might have proceeded on the bond while it was in his hands; and after assignment he would have been entitled to have the suit marked to his use on paying the amount due. The counsel cited *Geddes* v. *Hawk*, (1 Watts, 290); *Short* v. *Hubbard*, (2 Bingh. Rep. 349); 16 Viner's Abr. 400; *Rouse* v. *Patterson*, (7 Mod. 387); *Pearce* v. *Humphreys*, (14 Serg. & R. 25); *Morrison* v. *Redshaw*, (1 Saunders, 195, a. (n.)); Watson on Sheriffs, 302; Gilbert on Replevin, 218; *Barnes* v. *Lucas*, (Ryan & Mod. 264; s. c. 21 Eng. C. L. Rep. 434); *Sutton* v. *Waite*, (8 J. B. Moore, 27; s. c. 17 Eng. C. L. Rep. 96); Theobald on Surety, &c. 216; *Johnson* v. *Boyer*, (3 Watts, 376); *Hallett* v. *Mountstephen*, (2 Dowl. & Ryl. 343; s. c. 10 Eng. C. L. Rep. 92); *Croft* v. *Johnson*, (5 Taunt. 319); *Clippinger* v. *Creps*, (2 Watts, 45).

Mr. *Holcomb* and Mr. *Randall*, *contra*, contended, that the agreement of the 22d of March, 1832, by which judgment was confessed and a stipulation made for stay of execution till the 1st of June, 1832, by the present plaintiff with the plaintiffs in replevin, and obligors in the bond, without the knowledge or consent of the sheriff or his sureties, exonerated them.

As a general rule, the acceptance of an assignment of a bond taken by the sheriff is a discharge of the sheriff. The case of a replevin bond may be an exception; but the law has been pushed as against the sheriff, to an extent which operates very hardly on him, and the Court will not extend it further to his prejudice. While the defendant in the replevin holds the bond in his possession he cannot resort to the sheriff. He is bound to test the sufficiency of the sureties. This can only be done by a judicial proceeding. Here the plaintiff ought to have gone on and issued a *fieri facias*, as the surety may have property within the bailiwick. The sheriff has no means of securing himself while the bond is in the hands of the assignee. The plaintiff has made his election; and his action against the sheriff is gone, at least during the pendency of the proceedings against the surety.

They cited *United States* v. *Hillegas*, (3 Wash. C. C. Rep.

(The Commonwealth *v.* Rees.)

70); *Clippinger* v. *Creps,* (2 Watts, 45); *United States* v. *Simpson,* (3 Penn. Rep. 437); Theobald, 122–5; *Oxley's case,* (1 Dall. 349); 1 Saunders, 195 (*f,*) note by Williams; 16 Viner, 400, tit. Pledge; *Baker* v. *Garret,* (3 Bingh. 56; s. c. 11 Eng. C. L. Rep. 27).

The opinion of the court was delivered by

[*127] *GIBSON, C. J.—It seems strange, that the assignment of a replevin bond under the 11 G. 2, c. 19, should be different in its consequences from the assignment of a bail bond under the 4 Anne, c. 16. There is in these statutes, not only a similitude of subject, but a remarkable coincidence of provision ; yet the English judges, followed by our own, began by holding that the sheriff might be pursued after the assignment of a replevin bond, even for ulterior insufficiency of the sureties, while they held him freed from responsibility by the assignment of a bail bond. The construction in the case of a replevin bond, unjust as it is in its extreme breadth, which holds the officer to a measure of carefulness, unprecedented in the case of any one else but a carrier, is founded, as in the case of the carrier, in policy alone; with this difference, however, that the carrier is a voluntary agent, and the officer an involuntary one. In almost all other relations, no more is required from an agent compelled to act, than good faith, and an ordinary share of diligence. The hardship of the rule, however, would present no objection to it, were not the indications of policy more than fulfilled by it. According to the dictum of Justice Heath in *Hindle* v. *Blades,* (5 Taunt. 225,) the mischief before the statute was, that the sheriff frequently accepted men of straw ; and it doubtless was the generality of the practice, which induced a severity of construction that is found by experience to have exceeded the exigence. That the original construction was unnecessarily severe, is proved by the relaxation it has received, to an extent which requires no more than an ostensible, or, at most, an actual sufficiency when the bond was executed ; still the avowant has not been compelled to choose his recourse betwixt the sheriff and the sureties. It is said by Sergeant Williams, on what authority I know not, for none is quoted for it, that he may sue the sheriff after action on the bond ; and we are content the law be held so. So far as the construction has gone, it remains untouched with us by precedent of our own ; and British decisions since the revolution, are not a warrant for us to overturn what our predecessors erected, on the basis of authority which bound them at the time. Now, our act of 1772, followed the 11 G. 2, not only in its terms, but its construction. In *Oxley* v. *Cowperthwaite,* (1 Dall. 349,) and *Pearce* v. *Humphreys,* (14 Serg. & Rawle, 23,) it was broadly asserted, and without contradiction since, that the sheriff is re-

(The Commonwealth v. Rees.)

sponsible for the sufficiency of the sureties, at the determination of the replevin; and though we pay respect to foreign authority in the development of nascent principles, we dare not join it in those modern changes which have uprooted some of the deepest foundations of the law, or use it for encouragement even to correct established error. But though we may not follow foreign footsteps to get away from an erroneous construction, we may justifiably restrain it to cases already within it. Holding then the sheriff eventually responsible for the ultimate sufficiency of the sureties, we are prevented by no *precedent from holding the avowant's action against him to be suspended [*128] while proceedings towards satisfaction by judgment and execution against them are in progress. In *Moore* v. *Bowermaster*, (6 Taunt. 379,) time given to a plaintiff in replevin, was not allowed to discharge the sureties; but that is not the case of time given to the sureties themselves, and its effect upon the responsibility of the sheriff, would consequently present an open question. It may, however, be affirmed on principles of unquestionable analogy, that as the sheriff's liability is a resulting one, and that as the bond is his security, as well as that of the avowant, he is bound to manage it so as not to impair or depreciate it. Now, it will scarce be doubted that one of the obligors in this instance, was discharged by taking judgment against the other. That such will be the consequence at the common law, was settled in *Williams* v. *M'Fall*, (2 Serg. & Rawle, 280); and the act of the sixth of April, 1830, is applicable in its second section, to judgments confessed by one of two or more *several* obligors in a several action, for there could not be a joint one, and not to a judgment confessed by one of two or more *joint* and several obligors, sued jointly, which is the case provided for in the first section. Indeed neither justice nor convenience requires, that the plaintiff in a joint action, be suffered to sign judgment against one, and reserve the liability of the others, for actions to be brought thereafter. Why not as well allow him to go on in the action pending, when the expense would be less, the incongruity no greater, and the remedy in cases of simple contract more secure from prejudice by lapse of time? The exoneration of this obligor, therefore, might be made a subject of successful resistance. But we put the decision on broader ground. It has not been made judicially certain, that satisfaction could not be had of the judgment debtor;* and the plaintiff therefore has not a case.

Judgment affirmed.

Cited by the Court, 7 Watts, 431.

---

* The money was in fact received of him after the argument, and before the judgment.