## A. V. D. Watterson, Administrator of H. T. Knake, Deceased, v. Henry Fuellhart.

*Replevin—Claim property bond—Sufficiency of bond.*

Although a claim property bond fails to provide that the principal " shall abide the judgment of the court in all things relating to the premises," the bond is good if it stipulates that the principal shall be and appear at the next term of court, then and there to make good his claim to the property. Such a bond is an undertaking by the sureties that the principal shall be successful in his defense to the suit, and if not, the sureties will on his default pay the judgment against him.

In an action upon such a bond, a witness is competent to testify as to the solvency of the surety at the time the bond was given, if he had a thorough knowledge of his affairs, although not able to give a list of his debts, or a list and valuation of his properties.

Testimony to prove that the surety was reputed solvent at the time the bond was given is admissible, not to prove solvency, but to negative any

assertion of negligence on the part of the sheriff, in accepting sureties reputed insolvent.

The several undertakings stipulated by a replevin bond constitute distinct and independent conditions, and a breach of any will constitute a forfeiture.

In taking a claim property bond, it is not enough that the sheriff should accept a surety or sureties deemed by him fairly sufficient at the time. It is his duty to regard the fact that the final determination of the replevin suit may be delayed for months or possibly years, during which delay, by the accidents of business or fortune, the obligors thus deemed by him fairly sufficient when accepted, may become utterly worthless. He must have belief, in good faith and upon reasonable ground, that the surety was not only able at the time to pay the amount of the bond, but had such a credit as to be likely to remain good to the determination of the proceedings; but the sheriff will not be held to insure the plaintiff against loss from a contingency which by care he could not foresee. The rule of law governing the liability of a sheriff in accepting sureties on a replevin bond is not necessarily applicable in all its rigor to a claim property bond.

Argued May 6, 1895. Appeal, No. 14, Jan. T., 1895, by plaintiff, from judgment of C. P. Warren Co., Sept. T., 1895, No. 18, on verdict for defendant. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Assumpsit on a claim property bond. Before NOYES, P. J.
The material portion of the bond in suit was as follows :

" Whereas, a writ of replevin, wherein A. V. D. Watterson, admr. est. of H. T. Knake dec'd is plaintiff and W. H. Thompson is defendant, hath issued out of the court of common pleas, in and for the county of Warren, and is made returnable on the first Monday of September next for 1 piano, of the price of six hundred dollars, which the said W. H. Thompson doth unjustly detain, as it is said—and whereas, the said W. H. Thompson doth plead property in the said piano by reason whereof the same cannot be given up under the said writ.

"Now the condition of the above obligation is such, that if the said W. H. Thompson shall be and appear at the county court of common pleas, to be held at Warren, in and for the said county, upon the first Monday of September next, then and there to defend and make good his claim to the said piano, and shall make return of the same, if return thereof shall be adjudged by law, and shall also save, keep harmless and indemnify the said sheriff in the premises, then this obligation to be

void and of no effect; or else to be and remain in full force and virtue."

The principal facts will be found in the opinion of the Supreme Court.

Plaintiff claimed that the bond was insufficient in form and that the sureties accepted by the sheriff were notoriously insolvent at the time the bond was taken; or at least their financial condition was such as to warn the sheriff that they were not likely to remain solvent until the replevin suit should be determined.

When A. J. Hazeltine, a witness for defendant, was upon the stand, he was asked this question:

" Q. Had you knowledge of his (J. R. Timmons') solvency on the 6th day of June, '91, from what transactions you had with him and from report? "

Question objected to by plaintiff's counsel,—that the question of solvency cannot be proved by report.

Objection overruled. Exception by plaintiff's counsel and bill sealed.

Pursuant to which ruling the witness answered, " I considered him solvent." [1]

When Bryant H. Blood, a witness for defendant, was upon the stand, defendant's counsel proposed to ask him whether A. R. Blood, on the 6th of June, 1891, was solvent or insolvent. It was objected to, that the witness could only testify to what Blood had and what he owed, from which the inference of solvency or insolvency could be deduced. The objection was overruled, and bill sealed for plaintiff.

Pursuant to which ruling the witness replied that A. R. Blood was solvent. [2]

When D. L. Gerould, a witness for defendant, was upon the stand, he was asked the question:

" Q. What was Blood's condition as to being solvent or insolvent, upon the 6th of June, '91? "

Objected to for the same reasons given to the testimony of Bryant H. Blood.

The court admitted his testimony as follows:

" I should consider him solvent." [3]

When William Muir, a witness for defendant, was upon the stand, he was asked this question:

"Q. Did you know Blood's reputation at that time for solvency, among business men in this neighborhood?"

Objected to as above.

Objection overruled.· Exception by plaintiff and bill sealed.

Pursuant to this ruling witness testified that he did know the general reputation of A. R. Blood for solvency at the time indicated by the question and that it was good. [4]

Plaintiff's points, among others, were as follows:

"9. By making return that he (said Fuellhart) had taken 'a claim property bond,' the plaintiff could no longer look to the piano, which by the said Fuellhart's act became thenceforth the property of the defendant in said replevin suit, and therefore the only remedy for plaintiff, in event of recovery in the replevin suit, was either by action upon the bond in the name of the sheriff for use of the plaintiff (had said bond been in proper form and sufficient), or by action against the sheriff for taking an imperfect or insufficient bond." *Answer* (after reading and answering the plaintiff's 11th point): "I answer the other points presented by the plaintiff in the negative, except so far as they have been adopted and affirmed in the general charge." [6]

"5. The condition in said alleged defendant's property bond that said Thompson 'shall make return of the same' (the piano) 'if return thereof shall be adjudged,' is mere surplusage, as under the law and practice in such case, no such return of the property could be adjudged." *Answer* (after reading and answering plaintiff's 11th point): "I answer the other points presented by the plaintiff in the negative, except so far as they have been adopted and affirmed in the general charge. [7]

The court charged in part as follows:

"[Several legal questions are raised in this case, some of which have been a little troublesome for the court. The first one of these is, whether or not the bond taken by the sheriff is in such form as to satisfy the requirement of the law. It is claimed by the plaintiff that it is not, and that the sheriff is liable by reason of taking the bond which is not in such form as to enable the defendant to get any benefit out of it. The only condition in the bond which is necessary to refer to is the condition, 'That if the said W. H. Thompson shall be and appear at the county court of common pleas to be held at War-

ren, in and for the said county, upon the first Monday of Sep-
tember next, then and there to defend and make good his claim
to the said piano,' and so on, then the bond ' to be void; or
else to be in full force and virtue.' It is claimed by the plain-
tiff that this means merely that Thompson shall be and appear
at the September court for the purpose of making good his
claim ; and as he did that—entered his appearance in due course
-of the proceeding—he has satisfied the condition, and therefore
the bond was of no value; that it has never been broken and
was of no use to the plaintiff in that suit.

" We think this is not a correct interpretation of the lan-
guage used here. We think it means, in substance, that the
defendant, the obligor, Thompson, should appear on the first
Monday of September next, and should thereafter in due course
of the proceedings make good his claim of title to the property.
If he failed to do that, the bond is forfeited. And had the
sureties been good and responsible, the plaintiff in this suit
might collect the amount of the judgment from them—Thomp-
son being himself insolvent.] [8]

" [With respect to the replevin bond given by the plaintiff,
before the sheriff seized the property in the replevin, the law is
established in Pennsylvania that the sheriff is responsible for
the sufficiency of the sureties, not only at the time the bond is
executed, but until the end of the proceedings. And it is
argued, with a good deal of force, that the reasons which lean
to such a construction apply with equal force to the claim prop-
erty bond given by the defendant who keeps the property, claim-
ing it as his own. In both cases the bond is taken by the
sheriff, who is the sole judge of the sufficiency of the sureties.
Both bonds contain a clause for the indemnification of the
sheriff. Suits upon them must be brought in the name of the
sheriff for the use of the person injured. In all these particu-
lars they are alike, and the reasoning would seem to apply as
well to one as to the other.

" But it seems to us a very harsh rule that the sheriff should
be held responsible for what he could not possibly foresee, and
what may happen afterwards, notwithstanding the greatest fore-
sight. It has been said in all the decisions of the state, I think,
that the rule which makes him so liable on a replevin bond is
a harsh one; but courts have felt bound to follow an established

precedent, as the legislature so far has not seen fit to interfere and change it.

" There being no authority in this case requiring me to hold otherwise, I think that justice and the.better reasoning of the case requires me to hold, that, if the sheriff, in good faith and with reasonable diligence and care, exercised his discretion and released the property only upon a bond which at the time was sufficient, he has done his duty, and ought not to be held in any further liability.]" [9]

" [I have said to you that the form of the bond is sufficient. Did the sheriff use due care and reasonable diligence to secure sureties who would be responsible, and probably responsible at the end of the proceedings ? He was bound to know that these sureties could not be called upon to pay until the end of the replevin proceedings. Of course, he was bound to require sureties whom he had reasonable cause for believing that they would not only be good at the moment, but good at the end of the proceedings ; that they should be solvent—having sufficient estate to answer the amount of the bond, and such credit as would lead to a reasonable probability that they would be solvent at the end of the replevin proceedings. If he did that, made a reasonable inquiry as to these facts, acted as a prudent man would act in his own business, and just as careful, then he discharged his duty, and he would not be responsible. But if he failed in this respect he is responsible. If he failed to secure proper sureties by his own negligence, or failed to give such attention and care as a prudent man would give to his own business, under similar circumstances, then he would be liable to the plaintiff, otherwise not. If, when this bond was executed, the sureties were in fact—or if only one was in fact such a surety as I have described, having estate sufficient to answer the bond, and of such credit as would lead to a reasonable probability that he would continue to be good to the end of the proceedings, the sheriff would not be liable, even although .the sureties afterwards became insolvent, and the debt be lost by the plaintiff by reason of it. I think, gentlemen, this covers all the legal questions in the case.] [10]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned*, among others, were (1–4) rulings on evi-

dence, quoting the bill of exceptions; (6–10) above instructions, quoting them.

*J. H. Donly, A. V. D. Watterson* with him, for appellant.— Reputation is not admissible to prove insolvency; but facts may be shown from which insolvency may be inferred: 11 Am. & Eng. Ency. of Law, 172; Stewart v. McMurray, 3 So. Rep. 47; Lawson v. Orear, 7 Ala. 785; Branch Bk. v. Parker, 5 Ala. 731; Myers v. Clark, 3 W. & S. 535.

A condition in a claim property bond to return the goods to the plaintiff in the event of his recovery, cannot be enforced; but it will not avoid the bond; such condition is a nullity: 2 Brewst.'s Pr. 923; Rockey v. Burkhalter, 68 Pa. 221; Chaffee v. Sangston, 10 Watts, 265; Moore v. Shenk, 3 Pa. 13; Hicks v. McBride, 3 Phila. 377; 2 Tr. & H. Pr. sec. 1737; People's Bank v. Denig, 131 Pa. 241.

Sureties may in all cases stand upon the exact terms of their contract: Wells on Replevin, sec. 429, citing Fullerton v. Miller, 27 Md. 5; Tarpey v. Shellenberger, 10 Cal. 390; Clay v. Roland, 24 Cal. 147; Clark v. Norton, 6 Minn. 412; Mitchun v. Stanton, 49 Cal. 304.

In every rightly written "claim property bond" a condition appears that defendant shall abide the judgment of the court in all things relating to the premises: 2 Tr. & H. Pr. sec. 1737; 1 Brewst.'s Pr. 127; Leisenring's Forms, 187; Morris's Repl. App. 324; Dunlap's Forms, 175, 176; Hicks v. McBride, 3 Phila. 377.

He who is exclusively authorized to take and judge of the security, should rather be affected by its eventual insufficiency than he who has no right to question its validity: Pearce v. Humphreys, 14 S. & R. 23; Oxley v. Cowperthwaite, 1 Dall. 349.

*W. W. Wilbur, Wm. Schnur* with him, for appellee.—Evidence of general reputation as to the want of credit in the neighborhood of their respective residences will be received to prove the sureties insufficient: Scott v. Waithman, 3 Starkie, 168; 1 Greenl. on Evi. 10th ed. sec. 101; Com. v. Werntz, 161 Pa. 591; Wust v. Erie City Iron Works, 149 Pa. 263.

It may be taken as conclusively settled, that the obligors in

a replevin bond, whether they be called principals or sureties, are bound to make good each of its several conditions, among which stands prominently the stipulation to prosecute : Clark v. Morss, 142 Pa. 321 ; Schening v. Yard, 88 Pa. 286 ; Duncan v. Sherman, 121 Pa. 530 ; Borland v. Meurer, 139 Pa. 513 ; Irvin v. Kutruff, 152 Pa. 609.

The sheriff is answerable for the sureties in a replevin bond at the termination of the suit, and it is not enough that they were sufficient when taken : Pearce v. Humphreys, 14 S. & R. 23 ; Oxley v. Cowperthwaite, 1 Dall. 349 ; Weaver v. Lawrence, 1 Dall. 157.

If the defendant claims property and desires to find security before a removal of the goods, the sheriff must allow him a reasonable time to find security and give a claim property bond, and keep the goods ; otherwise, in an action against him in trespass by the defendant in the replevin, he could not justify under his writ : Hocker v. Stricker, 1 Dall. 225 ; Pearce v. Humphreys, 14 S. & R. 25.

Where the goods replevined are left with the defendant under a claim property bond, and the plaintiff recovers, he recovers a judgment for the value of the goods, as in this case, and has remedy by execution against the defendant, and that failing him, he can bring an action on the bond : Easton v. Worthington, 5 S. & R. 130 ; Warner v. Aughenbaugh, 15 S. & R. 9.

But when the rule is applied to a claim property bond, all the reasons for holding the sheriff liable for the ultimate sufficiency of sureties in a replevin bond are wanting : Pearce v. Humphreys, 14 S. & R. 26.


OPINION BY MR. JUSTICE DEAN, July 18, 1895 :

On May 26, 1891, H. T. Knake, plaintiff's intestate, issued a writ of replevin against one W. H. Thompson for a piano valued at $600. The writ was placed in the hands of defendant, sheriff Henry Fuellhart who, on the second day afterwards, served it on Thompson, who gave to the sheriff a claim property bond, with two sureties, in penal sum of $1,200, and retained possession of the piano. Thompson then entered appearance and plea, and on 25th of February, 1892, after trial, plaintiff got a verdict for $550, upon which judgment was entered. Upon this,

he issued execution against Thompson, which was returned
nulla bona.    Then plaintiff brought this suit against the sher-
iff, averring that the property bond accepted from Thompson
was defective in form, and the sureties insufficient, and for his
neglect in accepting such bond he was answerable to him in dam-
ages.    The sheriff, by proper plea, denied his liability.    When
the case was on trial, the plaintiff offered in evidence the bond,
to show that it was insufficient in form, in that it did not contain
an obligation that defendant " shall abide the judgment of the
court in all things relating to the premises."    This, plaintiff
argued, was the omission of any undertaking on part of the
sureties that Thompson would pay the judgment against him in
the action of replevin.    The court, however, held that the fol-
lowing stipulation in the bond was a sufficient undertaking to
that effect: " That if the said W. H. Thompson shall be and
appear at the county court of common pleas to be held at War-
ren . . . . on first Monday of September next, then and there
to make good his claim to the piano ; " that this was an under-
taking by the sureties that Thompson should be successful in
his defense of the suit, and if not the sureties would pay the
judgment against him.

Plaintiff then offered evidence tending to show that at the
date of the judgment in the replevin suit the sureties, J. R.
Timmins and A. R. Blood, were insolvent; he further offered
some evidence tending to show they were also insolvent when
the bond was executed; to this defendant replied by evidence
tending to show that at that date they were solvent, and worth
far more than the amount of the bond.

As to these questions, the court submitted the evidence to
the jury to inquire and find whether the sureties were suffi-
cient when the bond was taken, instructing them, if they were,
and there was a reasonable probability of their solvency at the
end of the replevin suit, he had performed his duty ; that he
was not answerable, absolutely, for their subsequent solvency,
but was bound to reasonable diligence, care and good judgment
when he accepted them.

Under this instruction, there was a verdict for defendant,
and plaintiff now appeals, assigning twelve errors.

The first four are to the ruling of the court admitting certain
evidence as to the solvency of the sureties on 6th of June, 1891

the date of the bond.   The question put to the witnesses by
defendant's counsel was, whether A. R. Blood, one of the sure-
ties, was solvent or insolvent.   This was objected to by plain-
tiff's counsel, on the ground that witness could only testify to
what the surety owned and what he owed, leaving the inference
of solvency or insolvency to be drawn by the jury.   The wit-
ness stated he was solvent.   Appellant now argues, this was
proving solvency by reputation.   An examination of the testi-
mony, however, shows this to be a mistake.   The witness was
a brother of the surety, and the latter, previous to this trial,
died.   The witness knew his brother's affairs in his lifetime,
and had assisted in the settlement of his estate.   From his
thorough knowledge, he considered him amply solvent at the
date of the bond, and for some time afterwards.   He could not
give a list of his debts, or a list and value of his brother's prop-
erties.   But his own means of knowledge of his brother's affairs
warranted a belief, and this he testified to.   As to the alleged
error in admitting this testimony, we can only say, there are no
known means of ascertaining, with absolute certainty, the sol-
vency of men engaged in business; it is seldom, other than the
owner knows or can know just what he owns; it is a rare
case that other than the debtor knows, or can know, just what
he owes.   Still, men act in contracting and crediting on their
judgment, because in most cases they can act on nothing else.   If
courts, banks, public officers and business men, did not move in
important transactions until absolutely certain of the solvency of
those with whom they dealt, the affairs of the world would stop.
Partnerships, banks, corporations and individuals, believed to
be solvent, sometimes fail, bringing loss and disaster to those
who, in the exercise of judgment, trusted them; but this only
shows that in a comparatively small percentage of cases good
judgment and care have been at fault; so here, with the most
intimate knowledge of his brother's affairs, the witness believed
him solvent when the bond was accepted, and that he so con-
tinued for some time after.   The testimony of the other three
witnesses was of the same import; one was his banker, the
other two his business partners; from their opportunities of
knowledge, they testified as to their judgment, and further said
that he was reputed solvent among business men.   It was
proper to give his repute, not to prove solvency, but to negative

any assertion of negligence on part of sheriff, by accepting sureties reputed insolvent. Of itself, it was not evidence, but plaintiff had offered evidence which was claimed to show notorious insolvency, and this was in answer thereto.

The fifth to eighth assignments, inclusive, are to the refusal to affirm plaintiff's first to ninth, inclusive, written prayers for instructions to the jury, as to insufficiency in form of the bond. The court, in its general charge, had already interpreted the obligation of the bond as fixing the liability of the sureties for any judgment obtained by plaintiff when the bond was accepted; this was a distinct denial of each of these points, and plaintiff has an exception to the general charge, which puts the error, if error there was, in shape to be corrected on appeal. The interpretation of the written bond was for the court, and not for the jury; after stating clearly the court's view of the obligation to the jury, it would have been a wholly useless formality to have read and denied these nine points; the whole nine were but a repetition of the idea, the bond was not properly drawn, so as to fix the liability of the sureties in the event of an adverse judgment in the replevin suit. We agree with the interpretation of the court below. The condition, that if the principal should appear in court and there defend and make good his claim to the piano, then the bond to be void, or else to be in full force and virtue, was a full assumption of liability by the sureties; he did appear, but did not make good his claim to the piano; in that event, the sureties undertook to pay the value, or what is the same thing, the amount of the verdict.

The several undertakings stipulated by a replevin bond constitute distinct and independent conditions, and a breach of any will constitute a forfeiture: Gibbs v: Bartlett, 2 W. & S. 33; Balsley v. Hoffman, 13 Pa. 603. The defendant, Thompson, having failed to make good his claim to the piano, there was a breach of one of the conditions, and therefore a forfeiture of the bond.

The court did not err in its construction of the bond, nor was there any fatal error in negativing the points as a whole.

While the bond is entirely sufficient in form, it is doubtless satisfactory to plaintiff to know, even if it had not been, no particular harm would have resulted, for he has shown by abundant proof the insolvency of the sureties at the date of the

judgment, so that, if the bond had been in form to meet his approval, it would not have availed to bring him his money from utterly insolvent sureties.

The controlling question in the case is raised by plaintiff's eleventh point, and answer of court thereto, as follows:

" It was not enough that the sheriff should have accepted a surety or sureties deemed by him fairly sufficient at the time. It was his duty to regard the fact that the final determination of the replevin suit might be delayed for months or possibly years, during which delay, by the accidents of business or fortune, the obligors, thus deemed by him fairly sufficient when accepted, might become utterly worthless."

To this the court answered: " In this point, the word 'fairly' is italicized, and I want to have it so understood. I affirm that point. I have already stated . to you the same thing, that in determining the sufficiency of the surety, the sheriff should have kept in mind the fact that his obligation was to run until the determination of the replevin proceedings. Did he have belief, in good faith and upon reasonable ground, that the surety was not only able at the time to pay the amount of the . bond, but had such a credit as to be likely to be good to the determination of the proceedings?"

In effect this point and answer thereto are embraced in appellant's ninth and tenth assignments of error. The same instruction, but with more elaboration, was given throughout the general charge. The sureties, at the date of judgment in the replevin suit, were insolvent; it is established by the decided weight of the evidence, that when accepted they were solvent. What was the measure of the sheriff's responsibility in the acceptance of the sureties?

In Oxley v. Cowperthwaite, 1 Dall. 349, and Pearce v. Humphreys, 14 S. & R. 23, it is laid down as a settled rule that, as to a replevin bond tendered by the plaintiff for the delivery of the property to him, the sheriff is answerable to the defendant, not only for the sufficiency of the sureties when the bond is taken, but when the judgment has determined the property to be in defendant. And so the law has stood. An examination of these cases will show that they followed the English rule, where the writ lay, only in cases of goods distrained for rent in arrears ; Oxley v. Cowperthwaite was decided in 1788 ; Pearce v. Hum-

phreys, supra, follows it thirty-eight years after, and in the opinion, DUNCAN, J., regrets that the rule does not accord with his sense of justice, but considers it too firmly established to be set aside. But in all the cases since, the question was, as in that case, as to the sufficiency of the bond given by the plaintiff, the replevin bond. The liability of the sheriff for the acceptance of sureties in the claim property bond, who were solvent at the time, yet when the event of the suit worked a forfeiture of their bond turned out to be insolvent, was not a question for decision in those cases. DUNCAN, J., in Pearce v. Humphreys, supra, says : " If I were to be guided by my own sense of justice without regard to authority, I must own that it would seem to me that commutative justice would require a different criterion ; for as the sheriff would be liable to an action of trespass for removing the goods and delivering them to plaintiff, when the defendant offers sufficient pledges on the claim of property, and could not justify under the replevin ; and that as the criterion there would be their sufficiency at the time, so it ought to be where he delivers up the goods to the plaintiff in replevin. Their apparent responsibility at the time when he accepted them would have been the justest rule at first. The sheriff does all he can to make diligent inquiry ; he ought not to be bound to know what nobody else knows." The intimation here is, that the sheriff in a claim property bond is only answerable for the sufficiency of the sureties when accepted. Again, in Commonwealth v. Rees, 3 Whart. 123, GIBSON, C. J., remarks, when speaking of the decisions in Oxley v. Cowperthwaite and Pearce v. Humphreys, supra: " The construction in the case of a replevin bond, unjust as it is in its extreme breadth, which holds the officer to a measure of carefulness, unprecedented in the case of any one else but a carrier, is founded, as in the case of a carrier, in policy alone ; with this difference, however, that the carrier is a voluntary agent and the officer an involuntary one." And again, in Myers v. Clark, 3 W. & S. 535, KENNEDY, J., says, the decisions in the two leading cases already cited have placed " the sheriff under a most unreasonable if not unjust responsibility." So, although the injustice of holding the sheriff to such a rigorous liability in case of a replevin bond has been often remarked on by the court, that responsibility has in no case been denied, and it exists to-day

as in Oxley v. Cowperthwaite, supra, decided more than a century ago; except as to Philadelphia and Allegheny counties, where by the special act of 10th of April, 1873, in Philadelphia, if the sureties justify before a judge, the sheriff is relieved; and in Allegheny county, by act of 19th of May, 1871, if they justify before the prothonotary, he is relieved of the absolute responsibility which otherwise the law casts upon him. But it never has been decided in this state that he is answerable for the solvency of the sureties in a claim property bond, at the end of the trial of the replevin suit. As we have noticed, this court with much reluctance has adhered to precedent in the case of the sheriff's liability on a replevin bond, but this is the first case so far as we have found where it was sought to hold him to the same liability on a claim property bond.

. The cases cited in suits on replevin bonds are not necessarily applicable to the claim property bond. The replevin bond is a statutory requirement; without it, the writ cannot be served; if the writ be executed, the situation of the parties is changed; the plaintiff has the possession of the disputed property before his right is judicially determined; the defendant is deprived of the possession of what may afterwards be found to be rightfully his; the change of status is altogether in favor of plaintiff and prejudicial to defendant, during the pendency of suit. The tendency of the proceeding, if the utmost rigor in exacting sufficient sureties on the replevin bond, be not enforced would be to tempt the unscrupulous to assert unfounded claims to chattels, and secure possession by the tender of worthless bonds to the sheriff. But if defendant tender a bond with sureties, at the time sufficient, then the suit is at once turned into a chose in action, resulting in a judgment in favor of plaintiff, if the right be in him. The parties, so far as possession of the disputed property is concerned, stand as before the writ, but, if the right be determined in favor of plaintiff, he has personal judgment against defendant, ripe for execution, and also recourse to the property bond.

We are not inclined to extend a hardship, only tolerated because of established precedent, to a case not clearly within the precedent. There is no imperative reason which requires us to hold that a faithful officer, when he executes a replevin writ, shall, at the same time, insure the plaintiff against loss

from a contingency, which by care he could not foresee; the loss should fall on the plaintiff, the party interested, and not on him who has no interest in the subject of the litigation.

We therefore decide in this case, that if the sheriff, in the exercise of care and judgment, accepted this claim property bond, with sureties, at the time solvent, or that he had reason to believe solvent, and there was no apparent danger of future insolvency, and permitted defendant to retain possession, he did all that the law required of him; the plaintiff can exact nothing more. This was, in substance, the law, as declared by the learned judge of the court below, both in his general charge and in his answers to points; in so declaring, he committed no error. All the assignments are therefore overruled, and the judgment is affirmed.