## Charles F. Swan and Clark P. Wilder v. James H. Gilbert.

1. EVIDENCE—*Statement by Managing Partner that Firm is Insolvent Not Objectionable as Conclusion.*—The testimony of an active managing partner of a mercantile business, familiar with its affairs, that the firm is either solvent or insolvent, is not subject to objection as the statement of a conclusion.

2. SHERIFF—*Need Not go Behind Process.*—It is not the duty of a sheriff to examine the files of a cause in which an execution issues, to ascertain whether such execution, which is against one of the partners of a firm, is for a firm or an individual indebtedness.

Swan v. Gilbert.

3. Execution—*To What Extent Plaintiff May Control.*—While a sheriff should obey all proper instructions given him by the plaintiff in an execution, it is not his duty, upon an execution against one party, to levy upon the property of another, nor to apply firm property to the satisfaction of an execution against one of the partners although the plaintiff may direct him so to do.

4. Partnership—*Rights of a Judgment Creditor of One Member of a Firm.*—A partner's interest in firm property may be sold under an execution against him only, but the purchaser takes the property precisely as it was held by the defendant in the execution, subject to the rights of the partnership creditors and the other partners. The sheriff can only levy upon the partner's interest in the whole stock, and a purchaser only acquires the interest of such defendant in such firm property as may remain after the partnership debts are paid and the accounts between the partners adjusted.

Trespass on the Case, for a false return. Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 30, 1896.

## Statement of the Case.

In 1892 the plaintiffs were copartners in the banking business in South Chicago. Prior to June 5th of that year, W. A. Cave, and Charles Cave were in the dry goods business, under the firm name of Cave Brothers. They had become indebted to the plaintiffs in the sum of $1,000 for money loaned them by plaintiffs, evidenced by the note of W. A. Cave, indorsed by his brother.

About March 1st of that year the copartnership of Cave Brothers was dissolved, and W. A. Cave and Frank G. Mathison entered into a copartnership in business as dealers in general merchandise at South Chicago.

The new firm, as part consideration of its formation, assumed the above note, and on June 5th substituted the judgment note of the firm for the principal of $1,000, after paying the interest on the old note to that date.

This note was signed in the firm name of "W. A. Cave & Co.," the signature being attached thereto by W. A. Cave in the regular course of partnership business, and with the knowledge and consent of Mathison.

About March 1st, the new firm purchased the stock of Edward L. Hassenstein, who was then in the dry goods business, paying partly therefor in cash, the balance in notes, the last of which, for $500, being a judgment note, due August 1, 1892.

The firm conducted two stores, one at No. 9206 Commercial avenue, known as the Bee Hive, under the name and style of W. A. Cave & Co., the other at Nos. 245 and 247 92d street, under the name of F. G. Mathison & Co., and known as the Fair. No others were interested in the business conducted at either place.

On the sixth day of August, 1892, W. A. Cave executed two chattel mortgages to secure an indebtedness from the firm to Marshall Field & Co., one securing the sum of $4,592.89, signed, "F. G. Mathison & Co.," the firm signature being attached by W. A. Cave, and covering the stock at Nos. 245 and 247, 92d street. The other to secure an indebtedness of $4,177.49, signed, "W. A. Cave & Co.," the firm signature being attached by Cave, and covering the stock in the store on Commercial avenue.

On the evening of said 5th of August, Charles J. Jones, then a deputy sheriff under the defendant, took possession of the respective stores and stocks under the above mortgages, as the agent for Marshall Field & Co., and also took possession of $72 in currency, then in the cash drawers of the stores.

On the 8th of August, 1892, F. G. Mathison executed two chattel mortgages on behalf of the firm, to secure an indebtedness to the Calumet National Bank of $3,000 each, one in the name of "W. A. Cave & Co.," on the stock in the Commercial avenue store, the other on the stock of the 92d street store, in the name of "F. G. Mathison & Co."

These mortgages were recorded at eight o'clock and thirty minutes, A. M., on that day.

Also, on the 8th of August, 1892, F. G. Mathison, on behalf of the copartnership, executed a chattel mortgage to Ella Orb, to secure an indebtedness of $825 on the stock in the Ninety-second street store, and at ten o'clock on that

day, said Ella Orb placed the same in the hands of said Jones for foreclosure. In the afternoon the Calumet National Bank mortgages were placed in the hands of Jones for foreclosure.

On the 8th day-of August, 1892, judgment by confession was entered in favor of the plaintiffs herein upon the judgment note of $1,000, executed in the name of " W. A. Cave & Co.," as above stated. The names of the individual members of the firm not appearing as makers, judgment was rendered against said " W. A. Cave," and execution was immediately issued upon this judgment.

Upon the same day judgment was entered in the Superior Court in favor of Edward L. Hassenstein on the judgment note signed by the firm, and given to Hassenstein on purchase of stock March 1, 1892.

The names of the copartners not appearing as the makers of this note, judgment was entered against "F. G. Mathison;" execution was immediately issued on said judgment, and at one o'clock and ten minutes of that day, the plaintiffs and Edward L. Hassenstein delivered their respective executions to the sheriff for collection, in accordance with the command of the writs, and a day or two afterward the sheriff was informed that the judgments were on partnership obligations.

Jones being in possession of the stocks, levied these executions as deputy sheriff, and advertised a sale under such levy; posted notices of sale, and shortly afterward tore down said notices. He also advertised the property for sale under the Marshall Field, Calumet National Bank, and Orb mortgages. Jones remained in sole possession of the property from the time he seized it under the Field mortgages on the 6th of August, until he finally sold it all on the 24th of the same month. The sale was advertised for the 22d of August, at ten o'clock A. M. At that time it was adjourned by Jones until the 24th of August, at the same hour. On the 22d, W. A. Cave executed two chattel mortgages on these stocks to the J. V. Farwell Company, one in the name of F. G. Mathison & Co., to secure an

alleged indebtedness of $3,500 on the Ninety-second street stock; the other in the name of F. G. Mathison & Company on an alleged indebtedness of $2,000, covering the Commercial avenue stock; and about four o'clock P. M., of the 22d of August, 1892, the Farwell Company placed these mortgages in the hands of Jones for foreclosure.

On the 24th of August, at the adjourned sale, the property was sold by Jones, he realizing from the two stocks the net sum of $18,200 over and above all costs and expenses, which, with the sum of $72 taken by him from the cash drawer, made the total net sum of $18,272 in his hands. From this sum he paid the Marshall Field mortgages in full, one of the bank mortgages in full, and the other as far as receipts from the property covered by it would extend. He also paid the Orb mortgage in full, leaving in his hands the sum of $2,240.78 net balance, including the $72 so taken from the cash drawers and not covered by any mortgage. There was no foreclosure of the Farwell mortgages, nor was a sale under them advertised.

While this money remained in his possession, the plaintiffs in each of the judgments demanded that he satisfy the executions out of these moneys.

This he declined to do, alleging the judgments to be against the individual members of the firm; he was then informed that the plaintiffs' judgment by confession was upon partnership obligations, and he was referred to and requested to examine the files of court for further evidences of that fact. He refused to do so, and paid the money on the Farwell Company's mortgages against the protest of the plaintiffs, and returned the executions *nulla bona*.

The plaintiffs brought this action of case against the sheriff for a false return; Hassenstein brought a like action; the cases were tried together. Aside from the respective notes, judgments and executions, the facts are precisely the same in the respective cases.

Trial was had before the court without a jury; the finding was for the defendant, and plaintiffs appeal to this court.

Swan v. Gilbert.

A. B. St. John, S. A. French, and D. W. C. Merriam, attorneys for appellants.

The execution is the process of the plaintiff, and he has a right to control it, and the officer is liable for disregarding the instruction of the plaintiff.    Morgan v. People, 59 Ill. 58; Alderson on Judicial Writs and Process, Sec. 181; Trowbridge v. Cushman, 24 Pick. (Mass.) 310.

The unsecured creditor of a copartnership has no lien, legal or equitable, on the partnership assets, and no right to have such assets first applied to the payment of his claim in preference to the like creditor of the individual partner; both classes of creditors stand on a strict equality as to the individual and partnership assets, without reference to the fact of partnership or no partnership.    Ladd v. Griswold, 4 Gilm. 37; Farwell v. Cook, 42 Ill. App. 293; Hapgood et al. v. Cornwell et al., 48 Ill. 64; Singer & Nimmick v. Carpenter, 125 Ill. 117; Hanford v. Prouty et al., 133 Ill. 352; Young et al. v. Clapp, 147 Ill. 191; Farwell et al. v. Huston, 151 Ill. 239.

Although a partner has an equitable right to have the assets of the partnership marshaled and applied to the liquidation of partnership debts and obligations in preference to claims against individual members of the firm, he can part with, waive or abandon such right, and when he does so the equity of the creditor is at an end.    Ladd v. Griswold, 4 Gilm. 38; Singer et al. v. Carpenter, 125 Ill. 120; see also the case of Young et al. v. Clapp et al., 147 Ill. 191, where the court holds as follows:

" The equity of the creditor is of a dependent and subordinate character and is to be worked out and enforced through the medium of the equities of the partners.    The partner may part with his right to have the firm property applied to the payment of the partnership liabilities; when he does so the equity of the creditor is at an end."

Flower, Smith & Musgrave, attorneys for appellee.

A sheriff can not levy upon any specific article of partnership property, and segregate that as the property of the

defendant partner, but must levy upon the partner's interest in the whole stock. The only interest he has in the property is in the surplus after the partnership debts are paid, and the accounts between the partners have been adjusted. Murfree on Sheriffs, Sec. 545.

" The buyer at an execution sale can not acquire a better title than the debtor partner had, and therefore does not acquire an absolute title to the chattels sold, nor priority over partnership creditors, but his title is subject to the partnership debt and equities between partners. He becomes a claimant in. common with the copartners for a share of the surplus. It follows that in case the partnership is insolvent, or the debtors' and copartners' equities absorb the debtors' share, the buyer of the interest gets nothing; hence the sheriff is not liable if he allow the effects to be applied to the payment of the partnership creditor, nor even if he release the levy in case of insolvency." Bates on Partnership, Secs. 1111, 1112; see also Chandler v. Lincoln, 52 Ill. 74.

The copartnerships being insolvent, Cave's individual interest was worthless; therefore there was nothing of value to levy on, and the plaintiffs could not have been injured by the failure to levy. Chandler v. Lincoln, 52 Ill. 74; Rainey v. Nance, 54 Ill. 29; Richards v. Allen, 117 Pa. St. 199 (11 Atlantic Rep. 552); Murfree on Sheriffs, Sec. 545; 2 Bates on Partnership, Secs. 1111 and 1112; Clements v. Jessup, 36 N. J. Eq. 569; Commercial Bank v. Wilkins, 9 Me. 28; Lyndon v. Gorham, 1 Gallison, 367; Rice v. Austin, 17 Mass. 197; Wilson v. Strobach, 59 Ala. 488; 1 Freeman on Executions, Sec. 199; State ex rel. Talbott v. Emmons, 99 Ind. 452; Staats v. Bristow, 73 N. Y. 264.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Upon the trial of this cause, it appeared, without dispute, that the firm of W. A. Cave & Co. and F. G. Mathison & Co. was insolvent at the time the sheriff received the plaintiffs' respective executions.

It is objected that a member of the firm was permitted to

testify that at such time the firm was insolvent, it being insisted that he should have been asked as to the assets and liabilities of the firm, that therefrom a conclusion as to its insolvency might be deduced.

We think that an active, managing partner of a mercantile business, familiar with its affairs, is to be considered a competent witness to testify regarding its insolvency, and that he may, upon direct examination, testify that the firm is either solvent or insolvent, leaving to the other side, if dissatisfied with such evidence, an opportunity to examine him as to the assets and liabilities of such firm, and the knowledge he has from which he makes his statement. Moreover, the undisputed facts brought out upon the trial, show beyond question that the firm was insolvent, as the witness testified.

Appellants claim that the sheriff, in refusing to consider their executions as being liens having precedence over the Farwell mortgages, assumed to act judicially; that he should, as requested by appellants, have examined the files of the causes in which appellants' respective judgments were entered, and that therefrom he would have seen that while each judgment was against but one of the partners, it was obtained for a firm indebtedness.

It appears to us that it was the appellants who asked the sheriff to act judicially. The sheriff had in his hands two writs, each of which ran only against one partner. Under such writ he had authority to sell only the right, title and interest of the person against whom the respective executions ran, and had no right to take or sell the property or interest of any other person. It was not for the sheriff to examine the files of the respective causes in which such executions were issued. His duty and his right was merely to obey the command of the processes given to him. Upon the judgment and execution against W. A. Cave, the sheriff could levy upon and sell only the right, title and interest of W. A. Cave; and upon the other judgment and execution against F. G. Mathison, the sheriff could levy upon and sell only the right, title and interest of F. G. Mathison. The

several judgments were in favor of different plaintiffs. The law is well settled, that a partner's interest in firm property may be sold under an execution against him only, and that interest, whatever it is, will pass by such sale to the purchaser, but the purchaser takes the interest precisely as it was held by the defendant in the execution, subject to the rights of partnership creditors in and to the property so sold, and also to the rights of the other partners. If, on a settlement of the partnership affairs, the defendant in the execution is entitled to nothing, the purchaser at such execution sale will not obtain anything by his purchase. Such purchaser is compelled to settle with the other partners precisely as would the defendant in the execution, had his interest not been sold. A judgment creditor of one partner can not, by a levy upon the debtor's interest in the firm property, or a sale thereof under execution, acquire a lien superior to the rights of the other partners, or of partnership creditors; nor can the sheriff levy upon any specific article of partnership property and segregate that as the property of the defendant partner; but he must levy, if at all, upon the partner's interest in the whole stock; for the only interest the partner has in the firm property is the surplus after the partnership debts are paid, and the accounts between the partners have been adjusted. Murfree on Sheriffs, Sec. 545; 2 Bates on Partnership, Secs. 1111, 1112; Chandler v. Lincoln, 52 Ill. 74; Rainey v. Nance, 54 Ill. 29; Richards v. Allen, 117 Pa. St. 199; Clements v. Jessup, 36 N. J. Eq. 569; Commercial Bank v. Wilkins, 9 Me. 28; Rice v. Austin, 17 Mass. 197; Wilson v. Strobach, 59 Ala. 488.

Upon the hearing of this cause it appeared that the entire firm property was not equal in value to the mortgages placed thereon by the firm to secure partnership debts, and that all of the mortgaged property had been sold for partnership debts, leaving a portion of the same unpaid.

As to the $72 in money, firm property, which the sheriff seized, while it was not covered by any of the chattel mortgages, and consequently could not be held thereunder, it

was firm property. The sheriff could not, therefore, apply the same to the satisfaction of either of the executions which he held, neither of the same being against the partners, but only against a partner. It is true that it is the duty of the sheriff to obey all proper instructions given him by the plaintiff in an execution; the writ is the plaintiff's; but it is not the duty of the sheriff upon an execution against A, to levy upon the property of B, although the plaintiff may command him to do so. Nor is it the duty of the sheriff to apply firm property to the satisfaction of an execution against one of the partners, although the plaintiff may direct him so to do.

The only interest in the firm property which either of the plaintiffs, by the respective executions placed in the sheriff's hands, could reach and sell, was the interest in the firm property of the respective partners against whom such executions respectively ran, and only the interest of such partner in said $72 could be applied to the satisfaction of such executions, or either of them.

It appeared upon the trial of this case, that neither of the persons against whom such executions severally ran, had, as against the creditors of the firm, any interest whatever in such $72.

We are not called upon to say what the rights of the respective plaintiffs would have been had they, or either of them, filed a bill setting up that the judgments were given for firm indebtedness, and asked that as firm creditors they be allowed to prorate with, or have precedence over the Farwell chattel mortgages made subsequent to the reception by the sheriff of plaintiffs' respective executions.

The judgment of the Circuit Court is affirmed.