[Civ. No. 3021.  Second Appellate District, Division Two.—December 4, 1919.]

ACTON ROCK COMPANY (a Corporation), Respondent, v. LONE PINE UTILITIES COMPANY· (a Corporation), Appellant.

[1] LEASES—ORAL AGREEMENT—SUBSEQUENT EXECUTION OF WRITTEN INSTRUMENT—VALIDITY—DATE EFFECTIVE.—Where an oral lease of a steam shovel for one year from date is agreed upon, and thereafter on the same day a written instrument, embodying the terms of the oral lease as well as an option to purchase, is executed by the lessor, but such instrument is not executed by the lessee until more than two months later, such instrument is valid and enforceable as a lease made on the date of the original oral agreement.

[2] ID.—RETROSPECTIVE OPERATION.—A lease, as to its commencement, may operate retrospectively from the date of its execution, as well as prospectively, and render the lessee liable for the agreed rent from the date therein specified.

[3] ID.—DELIVERY "F. O. B."—COMPLIANCE WITH AGREEMENT.—Where the lease of a steam shovel provides that such shovel shall be delivered to the lessee at the commencement of the term "f. o. b." cars at a designated railroad station, and the shovel at that time is at the designated station standing upon its own trucks on a siding ready to be coupled to a train, delivery by the lessor is complete.

[4] ID.—WHEN NOTICE OF DELIVERY UNNECESSARY.—Where the lessee knew that the shovel was at the point designated, resting on its trucks, in a condition to be hauled by the railroad company to any point of destination that it might desire, and without any expense whatever to it other than the freight which it had agreed to pay, it was not necessary for the lessor to give it any special notice of delivery.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Paul J. McCormick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

John O. Bender for Appellant.

Gurney E. Newlin for Respondent.

3.  What amounts to delivery of, or assumption of control over, property essential to a bailment, note, 1 A. L. R. 394.

FINLAYSON, P. J.—This is an action for rent on the lease of an electric shovel, and likewise to recover for failure to redeliver the shovel in good condition after termination of the lease. Defendant appeals from a judgment in plaintiff's favor.

On November 1, 1913, plaintiff was the owner of a Model 50 Marion Electric Shovel, then standing upon its own trucks on a siding of the Southern Pacific Company at that company's station at Tejunga, in Los Angeles County. It had been brought from Marion, Ohio, on its own wheels, attached to a train of cars. On November 1, 1913, plaintiff and defendant, through the president of the former and the vice-president and manager of the latter, orally agreed upon a lease of the shovel to defendant for one year, commencing November 1, 1913, for the sum of $3,650, being at the rate of ten dollars per day. On the same day a written instrument, embodying the terms of the oral lease as well as an option giving defendant the optional right to purchase the shovel, was executed by plaintiff, and thereupon given to defendant for execution by it. Later it was executed by defendant and returned to plaintiff. As the written instrument bears date January 17, 1914, it may be presumed that that was the date of its execution by defendant.

The writing, so far as material to the questions presented on this appeal, is as follows:

"This agreement, made and entered into this 17th day of January, 1914, by and between Acton Rock Company, a corporation, hereinafter termed the 'lessor,' as party of the first part, and Lone Pine Utilities Company, a corporation, hereinafter termed the 'lessee,' as party of the second part, witnesseth: That for and in consideration of the rental hereinafter specified, and of the conditions and covenants hereinafter set forth on the part of the lessee to be performed, the lessor does by these presents lease and demise unto the said lessee that certain Model 50 Marion Electric Shovel, owned by said lessor and now located at Tejunga, in the county of Los Angeles, State of California, for the period of one (1) year, commencing on the first day of November, 1913, and ending on the thirty-first day of October, 1914; said electric shovel to be delivered by the lessor to the lessee at the commencement of said term f. o. b. cars at Tejunga,

California. . . . And in consideration of the premises the said lessee does hereby hire from the lessor said electric shovel for said period of one year, and does covenant and agree that it will pay rental for said electric shovel at the rate of ten dollars per day, including Sundays, said rental to be payable . . . in the sum of thirty-six hundred and fifty and no/100 dollars ($3,650.00). . . . The said lessee does further agree that . . . it will return said leased property to the lessor in good order and condition (reasonable wear and tear thereof excepted) by delivering said electric shovel f. o. b. cars at any shipping point in Southern California designated by the lessor.''

Until some time in February or March, 1914, when it was washed off the tracks of the Southern Pacific Company and thrown upon its side by freshets due to a heavy flood, the shovel remained at the railroad company's siding at Tejunga, resting on its own trucks. After it was washed off the railroad tracks in February or March of 1914, it remained on its side until replaced by plaintiff. This was after the expiration of the term of the lease. At the time when the oral lease was made by plaintiff and defendant, which was also the day when plaintiff executed the written instrument, November 1, 1913, defendant expected to use the shovel in Cajon Pass, San Bernardino County, and to pay the freight for hauling the shovel from Tejunga to Cajon Pass and back again at the expiration of the lease, unless, in the meantime, it elected to exercise its optional right to purchase the shovel. At all times after the execution of the written lease by plaintiff on November 1, 1913, until washed off the tracks by the flood of the following spring, the shovel, upon its own wheels on the siding at Tejunga and without any cost to defendant other than the payment of the freight from Tejunga to Cajon Pass, or other destination, was in a condition to be moved to Cajon Pass, or elsewhere by defendant or by the railroad as defendant's agent.

In pleading its cause of action, plaintiff, in its complaint, alleges: ''That on or about the 17th day of January, 1914, said plaintiff entered into a certain agreement in writing with said defendant wherein and whereby said plaintiff leased and demised unto said defendant, and said defendant hired from said plaintiff, one Model 50 Marion Electric Shovel for the period of one (1) year, commencing on the

first day of November, 1913, and ending on the 31st day of October, 1914, for the rental of Ten ($10.00) Dollars per day, including Sundays, which said rental, to wit, the sum of Three Thousand Six Hundred Fifty ($3,650.00) Dollars, said defendant agreed to pay on or before the 31st day of October, 1914.'' This allegation, though not stating all the facts, conforms to the facts so far as it goes. There was an oral lease on November 1, 1913, and, on that date, there likewise was a written lease, embodying the terms of the oral lease, but executed by plaintiff only. It was not until January 17, 1914, that defendant obligated itself in writing, though it had orally leased the shovel on the first day of the preceding November.

[1] Appellant claims that because the complaint alleges, and the court finds, that the written contract was entered into on January 17, 1914, to take effect as a lease from November 1, 1913, it is impossible as a contract of lease—that it was impossible of performance, and that, therefore, no cause of action is alleged in the complaint or found by the court. There is no merit in this contention. Assuming, for the purpose of the decision, that, because the contract gives defendant the optional right to purchase, the contract is within subdivision 4 of our statute of frauds (Civ. Code, sec. 1624), and assuming further that the contract is indivisible and that no part of it became binding on defendant until signed by it, nevertheless the oral agreement was not absolutely void or invalid; it merely lacked the necessary evidence of its existence—evidence which later was supplied when defendant signed the written contract and returned it to plaintiff. (*In re Balfour*, 14 Cal. App. 261, [111 Pac. 615].) Or if, until the writing was signed by defendant, the contract should be deemed to be invalid, in so far as the creation of any obligation by defendant is concerned, nevertheless, the execution of the instrument by defendant, on January 17, 1914, not only supplied the necessary legal evidence but confirmed the oral lease that had been made on the first day of November next preceding, and which was evidenced by the writing that day signed by plaintiff. And from the date of the execution of the instrument by defendant, the previously made lease, now evidenced by a writing signed by defendant, but which it had consented to on November 1, 1913, was valid and enforceable as a lease made

on November 1, 1913—as much so as if the writing had been signed on that date by defendant as well as plaintiff. (*In re Balfour, supra.*) The mistake in the complaint as to the date when plaintiff and defendant entered into the contract gave rise to an immaterial variance, and no substantial right of defendant was affected thereby.

[2] Not only did the writing, when signed by defendant on January 17, 1914, confirm the previously made oral lease, but it is, moreover, the established rule that a lease, as to its commencement, may operate retrospectively from the date of its execution as well as prospectively. (24 Cyc. 960; *Johnson v. Stagg*, 2 Johns. (N. Y.) 510.) Assuming that, where a lease commences retrospectively, the tenant is not liable for the breach of a covenant occurring after the commencement of the term but before the execution of the lease, still in the instant case the defendant is liable for the sum agreed upon as the total rental for the use of the shovel, for it agreed, in writing, to pay a fixed and certain total amount, namely, $3,650.

[3] The lease provides that "said electric shovel shall be delivered by the lessor to the lessee at the commencement of said term, f. o. b. cars at Tejunga, California." It is claimed that plaintiff never delivered the shovel to defendant as agreed. This is an untenable claim. The initials f. o. b. standing for the expression "free on board," used frequently in mercantile contracts, imply that the lessor or vendor, as the case may be, will save the lessee or vendee from any expense attending the bringing of the article leased or sold to the point named, whether it be the initial point of transportation, as in the instant case, or the final destination of the consignment, as is frequently the case. In the instant case, not only was the initial point of transportation—Tejunga, Los Angeles County—the place designated as the point where plaintiff was to deliver the shovel f. o. b. the cars, but, as testified to by defendant's vice-president, it was understood that defendant itself should pay the freight from Tejunga to Cajon Pass, the point of final destination. Under this state of facts, plaintiff did everything requisite to a delivery as agreed. The shovel was at Tejunga; it stood on its own wheels or trucks on the railroad tracks at the siding at Tejunga. It is obvious, therefore, that, without any further act on plaintiff's part, it could be coupled to a train of

cars and hauled as a part of the train from Tejunga to Cajon, just as it had been hauled to this state from Marion, Ohio. Plaintiff exercised no control over it after the completion of the oral contract of November 1, 1913. Defendant knew all the circumstances. Upon paying the freight, as it was understood it should, defendant was free to take actual manual possession at any time after it entered into the oral lease on November 1, 1913, and cause the shovel to be moved by the railroad company to any place where it might wish to use it. In fact, the evidence shows that defendant considered the shovel under its control for use by it during the term of the lease. On March 25, 1914, after the shovel had been turned on its side by the flood heretofore referred to, defendant's vice-president and manager wrote a letter to the Southern Pacific Company requesting that company to have a wrecking crew raise the shovel and "place it on the tracks . . . and send us the bill." [4] Since defendant at all times knew that the shovel was at the point designated, resting on trucks, in a condition to be hauled by the railroad to any point of destination that it might desire, and without any expense whatever to defendant other than the freight from Tejunga to the point of destination, it was not necessary for plaintiff to give defendant any special notice of delivery. At all times after plaintiff signed the written lease on November 1, 1913, defendant had the right to take possession and assume control of the shovel, without any act on plaintiff's part whatsoever.

There are no other points that merit notice.

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.