## NATIONAL CITY BANK *v.* KIRK.

[No. 11,062. Filed March 17, 1922. Rehearing denied May 8, 1923. Transfer denied July 1, 1926.]

1. BILLS AND NOTES.—A note and contemporaneous written instrument intended to control it, made between the same parties, should be considered together as one instrument between the original parties, their privies, or persons with notice. p. 127.

2. BILLS AND NOTES.—*Note and contemporaneous oral agreement subsequently reduced to writing, should be considered as one agreement between the parties, their privies or persons with notice of the agreement.*—A note and a contemporaneous oral agreement, subsequently reduced to writing in pursuance thereof, providing for a renewal of the note, should, as between the parties, or those standing in their places or chargeable with notice of the agreement, be considered together as one agreement, the writing relating back to the time of the execution of the note and is supported by the same consideration. p. 127.

3. BILLS AND NOTES.—*Negotiable instrument is rendered nonnegotiable by contemporaneous agreement that it may be renewed.*—Under the Negotiable Instruments Act (Acts 1913 p. 120, §1, §11360 Burns 1926, §9089a Burns 1914), providing that an instrument to be negotiable "must be payable on demand or at a fixed or determinable future time," a contemporaneous agreement that a note may be renewed from time to time upon payment of ten per cent. of the face thereof renders it nonnegotiable. p. 127.

4. BILLS AND NOTES.—*Negotiable instruments are subject to defenses in hands of transferee knowing of contemporaneous agreement for renewal rendering them nonnegotiable.*—A holder in due course of notes negotiable under the statute (Acts 1913 p. 120, §1, §11360 Burns 1926, §9089a Burns 1914) does not lose his rights as such if without notice of a contemporaneous agreement for renewal thereof, but if he knew of such agreement, he would not be entitled to be protected from defenses because the notes, separate from the agreement, were negotiable in form. p. 127.

5. BILLS AND NOTES.—*Plaintiff suing on notes that were procured by fraudulent representations and negotiated in breach*

*of agreement by the payee has burden of proving that he is holder in due course.*—Under §59 of the Negotiable Instruments Law (Acts 1913 p. 120, §11418 Burns 1926, §9089g2 Burns 1914), where the payee obtained the maker's signature to notes sued on by fraudulent representations and committed a breach of faith by negotiating them, the burden is on the plaintiff to show that he acquired title to such notes as a holder in due course.   p. 130.

6.   EVIDENCE.—*Credibility of officer of the plaintiff testifying for it was for the jury.*—Where the burden was on the plaintiff suing on notes negotiable under the Negotiable Instruments Law to prove that it was a holder in due course, the credibility of its president who testified as to the circumstances under which the notes were acquired was a matter for the determination of the jury, in the light of all such facts and surrounding circumstances, including his interest in the result, although his testimony was not directly contradicted.   p. 130.

7.   BILLS AND NOTES.—*Parol agreement by payee not to negotiate notes given in payment of corporate stock and to take back stock and surrender the notes was not inadmissible as contradicting the notes.*—A parol agreement by the payee of notes given for corporate stock to hold them and not negotiate them and not to place them in any bank, and, on request, to take back the stock and surrender the notes was not inadmissible in evidence as contradicting the terms of the notes, as it only embodied the conditions under which they were delivered.   p. 133.

8.   BILLS AND NOTES.—*Evidence of agreement of payee not to transfer or negotiate notes was admissible to show breach of faith and placed burden of proof on the plaintiff.*—In an action on notes by a transferree, evidence of an agreement by the payee to hold them and not transfer or negotiate them was admissible in evidence to show breach of faith and thus put the burden of proof on the plaintiff under §59 of the Negotiable Instruments Law (Acts 1913 p. 120, §11418 Burns 1926, §9089g2 Burns 1914).   p. 133.

9.   BILLS AND NOTES.—*Nonnegotiable note is subject to all defenses, whether known or unknown.*—A nonnegotiable instrument is subject to all defenses in the hands of any holder, whether known or unknown at the time he acquires it.   p. 133.

10.   BILLS AND NOTES.—*Parol agreement as to time allowed for payment of notes held admissible on issues of negotiability and fraud.*—In an action by the purchaser of notes given in payment for corporate stock, a parol agreement by the payee as to the time the maker should have to pay for the stock and a subsequent letter with reference thereto were admissible as

bearing on the negotiability and on the issue of fraud in the procurement of the notes.    p. 134.

11.  FRAUD.—*Great latitude is permitted in introduction of evidence; even subsequent acts and statements being, admissible.*— When fraud is an issue, great latitude is permitted in the introduction of evidence; the whole transaction may be scrutinized, and subsequent acts and statements, within certain limits, are competent if they throw light on the intention of the party charged.    p. 134.

12.  APPEAL.—*Party not tendering instruction limiting consideration of evidence to subjects on which it was admissible cannot complain.*—In an action by the purchaser of notes given in payment for corporate stock, where an oral agreement of the payee and a subsequent letter confirming it were admissible on the issues of negotiability and fraud, the plaintiff could have tendered an instruction limiting consideration thereof to those issues, and, having failed to do so, cannot complain of their introduction in evidence.    p. 134.

13.  APPEAL.—*Objection that testimony was hearsay waived by not stating, the objection in trial court.*—An objection that testimony was based on mere hearsay must be deemed waived when that objection was not made in the trial court at the time it was offered.    p. 135.

14.  EVIDENCE.—*Director and state manager of corporation held competent to testify as to its solvency and financial condition.*— One who was director and state manager of a corporation was competent to testify whether it had ever made any money or paid dividends, and whether it was solvent when dividends were paid or at the time stock was sold, and as to the source of the money used in paying dividends, subject to cross-examination as to his knowledge of the facts about which he testified.    p. 135.

15.  BILLS AND NOTES.—*Evidence as to representations made as to financial condition of corporation at time stock sold for which notes were given held admissible on issue of fraud.*—In an action by the purchaser of notes given in payment for corporate stock, representations made by the corporation's president at the time the stock was sold concerning its earnings, surplus, payment of dividends and general financial condition were competent on the issue of fraud in procuring the execution of the notes.    p. 136.

From Morgan Circuit Court; *Alfred M. Bain,* Judge.

Action by the National City Bank against Clarence L. Kirk. From a judgment for defendant, the plaintiff appeals. *Affirmed.* By the first division.

*James W. Noel, Hubert Hickam* and *Alvan W. Boyd,* for appellant.

*Holtzman & Coleman, Matson, Kane & Ross* and *Baker & Daniels,* for appellee.

*George H. Batchelor,* Amicus Curiae.

BATMAN, P. J.—This is an action by appellant against appellee, to recover judgment on three promissory notes, executed by the latter to the American Underwriters Incorporated, and by it assigned to the former, two of said notes being for $2,000 each and one for $1,000. Each is dated, Indianapolis, Indiana, April 18, 1917, is payable four months after date, and bears interest at the rate of six per cent. per annum from date until paid. Each of the paragraphs of the complaint, in addition to the usual allegations for such an action, contains the following: "The plaintiff alleges further that before the maturity of said note, said American Underwriters, Inc., for value received, sold, assigned and transferred said promissory note to this plaintiff, and in transfer of the same executed its written indorsement on the back of said note, and that the plaintiff ever since has been and is now the owner and holder of said note; that said note is now past due and is wholly unpaid." When the issues were closed, four paragraphs of answer remained in the record. The first is a general denial. The second pleads a want of consideration. The fourth alleges in substance that the notes in suit were renewals of original notes given for the purchase of stock in the American Underwriters, Inc., hereinafter called the American Underwriters; that the consideration therefor had failed because the stock was worthless; that the notes were procured by the payee named therein by fraudulent representations as to the value of said stock; that said payee was a foreign corporation engaged in selling its stock in Indiana on the installment plan, and had not complied with the statutes of Indiana to author-

ize it to make such sale; that, at the time of executing said original notes, it was agreed between appellee and said payee that the notes should not be negotiated, but that appellee should have the option to renew said notes from time to time upon payment of ten per cent. of the original principal thereof; that said agreement to accept renewals was later reduced to writing in a letter from the payee to appellee, of all of which facts appellant had full knowledge before it purchased said original notes. The fifth paragraph is substantially the same as the fourth, except that it does not recite the details of the fraud alleged to have been used by said American Underwriters to secure the execution of said notes. Appellant filed a reply in three paragraphs. The first is a general denial. The second alleges that appellant is a *bona fide* holder of the notes in suit; that it purchased the same before maturity, for full value, in due course of business, and that, at the time they were assigned to it, it had no notice of any failure of consideration therefor, or of any other defense thereto. The third paragraph alleges that appellee did not use reasonable or any diligence to discover the facts as to the various defenses set up in his answer; that he did not, within a reasonable time after discovering said facts, repudiate his stock subscription and said notes; and that, before said repudiation, said American Underwriters withdrew from the State of Indiana, taking therefrom valuable assets belonging to it, and has had no assets within said state since its withdrawal therefrom. Other steps were taken in the formation of the issues which are not noted here, as they are not material to a determination of the questions presented by this appeal. The cause was submitted to a jury for trial, resulting in a verdict and judgment in favor of appellee. Appellant filed a motion for a new trial, which was overruled, and this appeal followed.

The only assignment of error on which appellant relies for reversal is based on the action of the court in overruling its motion for a new trial. Under this alleged error, it is contended, among other things, that the verdict is not sustained by sufficient evidence, and is contrary to law. This contention is based on a claim that the notes in suit are negotiable instruments, purchased by appellant before maturity for full value, in due course of business, without notice of any defense thereto, and, therefore, in its hands, they are not subject to the defenses which appellee seeks to assert against them. Appellee does not contend that said notes, if they stood alone, would not be negotiable instruments. His contention is that they must be read and considered in connection with a certain letter, received by him from the payee named in said notes, which renders the same non-negotiable. Said letter, omitting the date, address and signature, is as follows: "In connection with certain notes executed by you in favor of the American Underwriters, Inc., in the sum of $2,000.00, $2,000.00, $1,400.00, it is hereby agreed that these notes may be renewed from time to time on a minimum payment of ten (10) per cent. of the original amount of the note, together with current interest at the rate of six (6) per cent. It is understood, however, that interest on said notes shall not be chargeable until first renewal."

The evidence tends to establish the following facts with reference to said notes and letter: The notes in suit are the second renewals of three other notes, which, together with a check for $600, were executed by appellee in consideration of one hundred shares of stock in the corporation named as the payee therein. Said stock was purchased by appellee through a Mr. Hegepeth, who at the time was its president. Prior to the execution of said notes, Mr. Hegepeth called on appellee, and it was there agreed that the latter should purchase

fifty shares of said stock at $60 per share; that ten per cent. of the purchase price should be paid in cash, and that time would be given for the payment of the remainder thereof. Later, when Hegepeth returned to close the matter, he brought with him a subscription blank for appellee to sign, filled out for one hundred shares, being double the amount appellee had agreed to purchase. When Hegepeth's attention was called to this fact, he stated that he had been talking with some of appellee's friends, and found that they were very anxious for him to get a larger amount of the stock while it could be had at $60 per share. Appellee answered that he did not want to obligate himself for so large an amount, and Hegepeth then said, "You sign the subscription blank and these notes, give me your check for $600 and I will take the subscription blank and place it in my safe   *   *   *   and there is where it will remain, which notes will not be put in any bank, and if at any time you don't want to take the additional fifty shares, all you have to do is to let our office know, and the company will take the additional fifty shares back, and whatever you paid will be applied on the first fifty shares." With that understanding, appellee signed the subscription for one hundred shares, gave Hegepeth a check for $600, and executed said original notes, aggregating $5,400. At the time this was done, Hegepeth promised that when he returned to his office, he would write appellee a letter, confirming their agreement with reference to the time he was to have in which to pay for said stock. About eight days thereafter, appellee received the letter set out above, which was signed by the payee named in said notes, and its president, who negotiated the sale of said stock. Some time during the day after appellee had received said letter, the payee named in said notes sold and transferred the same to appellant. This sale and transfer was made after said

payee had solicited appellant to purchase a line of its notes. In the negotiations following such solicitation and preceding said sale and transfer, appellant was informed that the notes which it offered were received from the sale of stock in the American Underwriters; that in some cases, it was sold for cash, but in the majority of cases, it is sold for part cash, with the right given the customer to reduce his notes at each due date. During the course of such negotiations, it was agreed that when any of the notes purchased by appellant pursuant to their agreement fell due, that it should not notify the payors, but should notify the American Underwriters instead, and that it would "collect from the customer the amount due on the note and get the renewal note, and turn over to the bank the amount paid and the renewal note."

It is well settled that a note and a contemporaneous written instrument intended to control it, made between the same parties, should be read and considered 1-4. together as if one in form, where a controversy arises between the original parties, or those standing in their place, or chargeable with notice of such contemporaneous agreement. *Crouch & Son* v. *Parker* (1919), 188 Ind. 660, 7 A. L. R. 1598; *Myrick* v. *Purcell* (1905), 95 Minn. 133, 103 N. W. 902, 5 Ann. Cas. 148. It is obvious that the same rule is applicable where a note is supplemented by a contemporaneous oral agreement, subsequently reduced to writing in pursuance thereof, while said note is subsisting, as the writing relates back to the time of the execution of the note, and is supported by the same consideration. This is in accord with the general rule that an agreement that is non-enforceable because it rests in parol may be rendered effective by reducing the same to writing. *Acton Rock Co.* v. *Lone Pine Utilities Co.* (1919), 44 Cal. App. 597, 186 Pac. 809; *In re Balfour* (1910), 14

Cal. App. 261, 111 Pac. 615; *Campbell* v. *Preece* (1909), 133 Ky. 572, 118 S. W. 373; *Gate City Nat. Bank* v. *Elliott* (1915), 181 S. W. (Mo.) 25; *Webster* v. *Zielly* (1868), 52 Barb. (N. Y.) 482. Under certain circumstances, such writing becomes the sole repository of such an agreement. *Smith* v. *Hunt* (1912), 50 Ind. App. 592. It follows that if the letter in question is a writing of the character described, it constitutes a part of the notes in suit, since they are renewals of the notes executed by appellee at the time he purchased said stock, and must be read and considered in connection therewith. It will be observed that there is evidence tending to prove that at the time appellee purchased said stock and executed the original notes, an agreement was made by which he was to have time beyond their maturity for the payment of the greater portion thereof, and that this agreement should be confirmed by letter. It appears that about eight days thereafter, appellee received the letter set out above. An examination discloses that it does not purport to have been written for the purpose of repudiating or modifying said oral agreement, or of submitting a new proposition in lieu thereof, but it is clearly subject to the inference that it was written for the purpose of confirming the same, as the writer understood it, in accordance with the promise made in that regard. There is no evidence that appellee, on receiving said letter, made any claim that it did not contain the terms of their oral agreement. In the absence of evidence to the contrary, the jury could presume that no such claim was made, and, from the fact of appellee's silence in that regard, could have drawn the inference that such letter contained the terms of said oral agreement as finally made, and that he accepted it as a confirmation thereof. This would be true, although language may have been used in course of the negotiations upon which a different construction as to

the meaning intended might be placed. *Cavanaugh* v. *D. W. Ranlet Co.* (1917), 229 Mass. 366, 118 N. E. 650; *Manufacturers, etc., Bureau* v. *Everwear, etc., Co.* (1912), 152 Wis. 73, 138 N. W. 624, 42 L. R. A. (N. S.) 847, Ann. Cas. 1914 C 449. Having reached the conclusion that the evidence is sufficient to warrant the jury in finding that the letter in question confirmed the oral agreement, we must now determine what effect, if any, such letter had upon the negotiability of said notes. The Negotiable Instrument Act of this state provides, among other things, that an instrument to be negotiable "must be payable on demand, or at a fixed or determinable future time." §9089a Burns 1914. It has been held by this court in a recent decision that an agreement in a promissory note providing that, "the time of payment thereof may be extended from time to time, by any one or more of us, without even the knowledge or consent of the other or others of us," rendered the same nonnegotiable, as it failed to fulfill the above requirement of the statute. *Wayne County Nat. Bank* v. *Cook* (1920), 73 Ind. App. 404, 127 N. E. 773. There are equal if not stronger reasons for holding that the notes in suit, if controlled by the letter in question, as the evidence tends to prove, are non-negotiable, as it, in effect, not only provides that the notes may be renewed at the option of the payor, for any portion of the principal thereof, whether large or small, conditioned only that the ten per cent. named therein is paid. It thus appears that there was no absolute promise to pay "on demand or at a fixed determinable future time," but a qualified obligation as to the time of payment as to all, except the ten per cent. mentioned in said letter. This fact rendered said notes non-negotiable. *Citizens Nat. Bank* v. *Piollet* (1889), 126 Pa. 194, 17 Atl. 603, 4 L. R. A. 190, 12 Am. St. 860. However, as the notes,

standing alone, were negotiable in form, appellant would not lose his rights as a holder in due course if he acquired the same without notice of the contemporaneous agreement, but, in view of the evidence tending to prove that at the time appellant took an assignment of said original notes, it knew that the notes offered for sale by the American Underwriters had been procured through a sale of its stock, and, by agreement, were subject to renewal, we cannot hold that appellant is entitled to be protected from the defenses which appellee is seeking to assert in this action because the notes, considered separate and apart from the alleged contemporaneous supplemental agreement, as evidenced by the letter in question, were negotiable in form. *Saline Valley Bank* v. *Peckham* (1921), 108 Kans.. 560, 196 Pac. 593.

There is still another reason which prevents us from sustaining the contention of appellant, stated above, with reference to the verdict. It will be observed 5, 6. that the Negotiable Instrument Act of the state contains the following provisions: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." §9089g2 Burns 1914.

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he ne-

gotiates it in breach of faith, or under such circumstances as amount to a fraud." §9089c2 Burns 1914.

There is some evidence tending to show that the payee named in said notes obtained appellee's signature thereto by fraudulent representations, and thereafter committed a breach of faith by negotiating them. If the jury so believed, appellant was not entitled to recover unless it discharged the burden placed on it by said §9089g2, *supra,* viz.: that it acquired title to said notes as a holder in due course. Appellant endeavored to discharge this burden by the testimony of its president, but may have failed, as indicated by the verdict in favor of appellee. If the jury so concluded, we cannot say it erred in that regard, although the testimony of appellant's president was not directly contradicted by any witness, as his credibility was a matter for the determination of the jury in the light of all the facts and surrounding circumstances. In so holding, we are following the general rule, often repeated and applied in similar cases, to the effect that, where a party has the burden of proving a fact in a trial before a jury, and undertakes to do so by the testimony of witnesses, the court ordinarily cannot say, as a matter of law, that such fact has been established. A reason frequently given for the existence of such rule is that the attending circumstances and conduct of the witnesses may be such as to warrant the jury in disbelieving them. The interest of such witnesses in the result of the suit is generally recognized as being such a circumstance, and where such interest is shown, the general rule has been held to be applicable. We cite the following decisions in support of the rule stated, a number of which, like the instant case, involve the testimony of officers of banks, in behalf of the institutions they represented as such. 3 R. C. L. 1041; *Talge Mahogany Co.* v. *Burrows*

(1921), 191 Ind. 167, 130 N. E. 865; *First Nat. Bank* v. *Hall* (1917), 31 Idaho 167, 169 Pac. 936; *McNight* v. *Parsons* (1907), 136 Iowa 390, 125 Am. St. 265, 15 Ann. Cas. 665; *National Bank, etc.,* v. *Drewry* (1912), 70 Wash. 577, 127 Pac. 102; *Ireland* v. *Scharpenberg* (1909), 54 Wash. 558, 103 Pac. 801; *Engle* v. *Hyman* (1907), 104 N. Y. Supp. 390; *Rohweder* v. *Titus* (1915), 85 Wash. 441, 148 Pac. 583; *Merchants Nat. Bank* v. *Haverhill Iron Works* (1893), 159 Mass. 158, 34 N. E. 93; *Canajoharie Nat. Bank* v. *Diefendorf* (1890), 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; *First State Bank* v. *Hammond* (1907), 124 Mo. App. 177, 101 S. W. 677; *Second Nat. Bank* v. *Hoffman* (1910), 229 Pa. St. 429, 78 Atl. 1002; *Howard* v. *Louisville Ry. Co.* (1907), 105 S. W. (Ky.) 932; *Arnd* v. *Aylesworth* (1909), 145 Iowa 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638. In the case last cited, the court, in applying the general rule stated above, said: "It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him, and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but it is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place and manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment

in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law."

Appellant contends that the court erred in admitting the agreement in evidence that the notes should be held by the payee named therein and not placed in any bank, and that if at any time appellee should not want to take the additional fifty shares for which he subscribed, that, upon notice, the payee would take back said shares, and whatever appellee had paid would be applied upon the first fifty shares. Appellant bases this contention on a claim that the agreement in question, not being in writing, was inadmissible, as it contradicted the terms of the note, and, even if admissible, would not constitute a defense to the notes in its hands, as it is only chargeable with the defenses of which it had notice at the time it purchased said notes, and there is no evidence that it had knowledge of such agreement. As to appellant's first proposition, it suffices to say that such agreement does not purport to contradict the note, but only embodies conditions under which it was delivered. These conditions were a proper subject of parol proof. *McNight* v. *Parsons, supra.* Appellant's second proposition cannot be sustained, as the Negotiable Instrument Act of this state provides that a holder in due course is a holder who has taken the instrument under certain conditions, among which is the following: "That at the time it was negotiated to him he had no notice of *any* infirmity in the instrument or defect in the title of the person negotiating it." (Our italics.) §9089z1 Burns 1914. The act then provides that: "In the hands of any other holder than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." §9089f2 Burns 1914. These sections of the statute appear to be conclusive against

appellant's second proposition, since a non-negotiable instrument is subject to all defenses in the hands of any holder, whether known or unknown, at the time he acquires it. The evidence of the agreement in question was clearly admissible for the purpose of showing that the notes were negotiated in breach of faith, thereby placing the burden on appellant to prove that it acquired title thereto as a holder in due course, as provided in said §9089g2, *supra*. 8 C. J. 984; *Holdsworth* v. *Blyth & Fargo Co.* (1915), 23 Wyo. 52, 146 Pac. 603; *German-American Bank* v. *Cunningham* (1904), 89 N. Y. Supp. 836; *Ginsberg* v. *Shurman* (1911), 128 N. Y. Supp. 653; *Steinberger* v. *Hittelman* (1915), 156 N. Y. Supp. 320; *Gourley* v. *Pioneer Loan Co.* (1915), 51 Okla. 434, 151 Pac. 1072.

It is contended that the court erred in admitting in evidence the parol agreement as to the time appellee should have for the payment of the purchase price of said stock and the letter written subsequently with reference thereto. We are of the opinion, as hereinbefore indicated, that this evidence was admissible as bearing on the negotiability of the notes in suit. We are also of the opinion that it was admissible upon the issue of fraud in their procurement. It is well settled that on the issue of fraud, great latitude is permitted in the introduction of evidence. The whole transaction from beginning to end may be scrutinized, and subsequent statements and acts, within certain limits, are competent as throwing light upon the intention of the party charged. 14 Am. & Eng. Ency. of Law 196; 12 R. C. L. 430; *First Nat. Bank* v. *Harvey* (1912), 29 S. D. 284, 137 N. W. 365; *Copper Process Co.* v. *Chicago, etc., Co.* (1920), 262 Fed. 66, 8 A. L. R. 1477; *Hazelton* v. *Carolus* (1907), 132 Ill. App. 512; *Whitney Wagon Works* v. *Moore* (1888), 61 Vt. 230, 17 Atl. 1007; *Braddy* v. *Elliott* (1908), 146 N. C. 578,

60 S. E. 507, 16 L. R. A. (N. S.) 1121, 125 Am. St. 523; *Ross v. Miner* (1886), 64 Mich. 204, 31 N. W. 185; *Salmon* v. *Richardson* (1862), 30 Conn. 360, 79 Am. Dec. 255. It is clear to us that the evidence in question was within the limits contemplated by the rule stated. If appellant believed the jury might improperly consider any part of such evidence in determining some question not involved in the issue of fraud, it could have tendered an instruction limiting its consideration, but, having failed to do so, it is in no position to complain in that regard. *International Harvester Co.* v. *Haueisen* (1918), 66 Ind. App. 355; *Chesapeake, etc., R. Co.* v. *Perry* (1919), 71 Ind. App. 506, 125 N. E. 414.

It is further contended that the court erred in permitting the witness Hall to testify as to whether the American Underwriters had ever paid dividends 13, 14. on its stock, and as to the source of the money used for such purpose. Also as to whether it had ever made any money, and as to its solvency when dividends were paid and when the stock in question was sold to appellee. Appellant insists that this testimony was based on mere hearsay, and consisted of conclusions drawn from facts of which the witness had no personal knowledge. If the first objection stated were valid, it must be deemed waived, as it was not made in the court below. *Van Spanje* v. *Hostettler* (1918), 68 Ind. App. 518. In connection with the second objection stated, it should be noted that the witness was a stockholder in the American Underwriters, a director thereof, and its general manager for Indiana. This being true, we are of the opinion that he was competent to testify concerning the matters stated, the weight of such evidence being for the jury, after such disclosures as to knowledge of details as might have been made on cross-examination. As to the matter of solvency, it has been held that such fact, like that of value and posses-

sion, is the subject of a direct opinion by one in a position to know, without first stating the items of fact upon which it is based. *Campbell* v. *Park* (1904), 128 Iowa 181, 101 N. W. 861, 104 N. W. 799; *Swan* v. *Gilbert* (1896), 67 Ill. App. 236; *Hendrey* v. *United States* (1916), 233 Fed. 5; *Watterson, Admr.,* v. *Fuellhart* (1895), 169 Pa. 612, 32 Atl. 597; *Blaisdell, Admr.,* v. *Davis* (1900), 72 Vt. 295, 48 Atl. 14. Appellant also insists that the testimony under consideration was erroneously admitted, as the evidence does not show that it had notice of the defense which it tends to establish. The question of notice, however, was one for the jury, on which appellant had the burden, if it found that the American Underwriters' title to the notes in suit was defective, as it may have done under the evidence. We conclude that there was no reversible error in admitting the testimony under consideration.

Appellant's final contention with reference to the court's error in admitting evidence is based on the fact that appellee was permitted to testify as to the representations made to him by the president of the American Underwriters concerning its earnings, surplus, payment of dividends, and its financial condition generally. This evidence was clearly competent on the issue of fraud, and the court did not err in admitting it.

An application of the law, as hereinbefore stated, to the facts which the evidence in this case tends to prove makes it apparent that there was no reversible error in the action of the court in giving or refusing to give any instruction of which complaint is made. Failing to find that the court erred in overruling appellant's motion for a new trial, as it contends, the judgment is affirmed.