OHIO CONTRACT PURCHASE COMPANY *v.* BOLIN ET AL.

[No. 13,483.   Filed October 8, 1929.]

*A. W. Knight, S. W. Lee* and *Edward H. Knight,* for appellant.

*A. C. Miller,* for appellees.

McMAHAN, C. J.—This is an action by the Ohio Contract Purchase Company of Cleveland, Ohio, against Roland H., Forest and Walter Bolin, appellees herein, to recover a balance alleged to be due on a promissory note given by them to the Zero Refrigerator Company of Indiana, by the terms of which the defendants promised to pay $1,405, in monthly installments of $50. The note was dated May 26, 1924, and a few days later was, by indorsement, transferred to the Zanesville Engineering and Refrigerator Company of Zanesville, Ohio, and by it indorsed and transferred to appellants for full value on June 2, 1924.

Appellees answered in six paragraphs, as follows: (1) General denial; (2) payment; (3) that appellant took the assignment with knowledge that the note was executed without consideration; (4) and (5) no consideration; (6) that appellees were induced to purchase the refrigerator, for which the note was given, because of certain false and fraudulent representations of the seller, and that the seller of the machine and the engineering company had entered into a conspiracy and agreed, the one to manufacture, and the other to sell, a worthless refrigerator for the purpose of defrauding persons buying the same; that appellees relied on the false representations, and believing the same, executed the contract of purchase; that they paid $150 in cash and gave their note for the balance; that the note and contract were thereafter assigned to the engineering company and by it to appellant, both of said assignees at the time having knowledge that the contract and note had been procured by fraud.

The defendants also filed a cross-complaint, in substance the same as the sixth paragraph of answer, asking that the contract and note be declared void, and that the same be surrendered to them. A copy of the con-

tract was made a part of the fifth and sixth paragraphs of answer and of the cross-complaint.

This contract was made up of an order for the refrigerator fully equipped and installed, appellees agreeing to pay $1,555 therefor in cash and note as alleged in the answer and cross-complaint. This order was dated March 21, 1924, was signed by appellees and accepted by the refrigerator company, the conditions and guaranties on the back thereof being made a part of the order and agreement. This order, in addition to being accepted by the selling company, was also approved by the engineering company.

The guaranty on the back of the contract is as follows: "Vendor guarantees that the apparatus herein described is completed and all parts of proper strength and proportions for the work for which they are designed and that material, workmanship and finish are first class. Vendor further guarantees that all parts will perform their function in the proper manner and will give the best results obtainable with other apparatus of the same type. Vendor guarantees the apparatus to be free from inherent defects of workmanship and material and shall repair same free of charge for one year from date of installation, vendee to pay traveling expenses of repairman to vendor's service station or nearest agency capable of making necessary repairs. Any repairs made without vendor's written authority to be at expense and risk of vendee."

There was also on the back an agreement that title should remain in the seller until the purchase price was paid in full; that the order covered all agreements concerning the same; and that no representations made by any agent not included therein should be binding.

The cause was tried by the court and resulted in a finding for the defendants on the issues presented by the complaint and by the cross-complaint, and a judgment

was rendered to the effect that appellant take nothing and that the contract and note should be surrendered and cancelled. From this judgment, the plaintiff has appealed, and contends that the decision is not sustained by sufficient evidence, and that it is contrary to law.

The undisputed evidence shows the execution of the contract, the installation of the refrigerator, the payment of the $150, the execution of the note to the seller of the refrigerator for $1,405, negotiable in form, and payable in monthly installments of $50, the assignment by the payee to the engineering company, the assignment by that company to appellant for full value before the maturity of any of the monthly installments and the subsequent payment by appellees of nine of the monthly installments.

Forest Bolin, a witness for appellees, testified that he, his father, Roland H. Bolin, and his brother Walter were engaged in the retail grocery business at Brazil, and entered into the contract with the refrigerating company for the refrigerating plant; that the agent who made the sale to them represented the machinery as being very efficient; that it would keep produce in perfect order; that the cost of operation should not be more than $10 to $15 a month; that piping, coils, etc., would be the very best and first class; that it was non-poisonous non-explosive and safe; that they believed these representations to be true and had no knowledge relating to the plant; that the plant would not operate to start with, and was a source of trouble because of water in the lines through faulty piping; that it would not keep a charge of gas in it; that they kept the plant about 11 months and had a service man from Indianapolis two or three times a week for two or three months; that the power and water bills ran from $60 to $75 a month; that their losses on meats, vegetables, etc., were about $1,000; that they had

to run the plant from 20 to 24 hours a day; that seller told them they would not have to run plant more than four hours a day even in hot weather; that they finally took the plant out, after having notified appellant that they were going to do so. He also testified that they received three letters from appellant relative to the plant, and that they would not have purchased the plant if they had known the representations so made were false.

O. C. Cameron testified that he was at one time vice-president and manager of appellant company, and, while so acting, wrote three letters to appellee, all of which were introduced in evidence. One was dated in March, 1925, and was in reply to a letter and telegram from appellees, and informed appellees that the writer understood the men connected with the Indianapolis branch of the refrigerator company had discontinued business and that the engineering company would have repairmen at Indianapolis the next week to look after service required, as well as the sales of new machines. The next letter was dated March 30, 1925, and informed appellees that the engineering company had men in Indianapolis looking after service of machines; that these men had been sent there at the request of appellant; expressed regret to learn that appellees had ordered another machine, and called appellees' attention to the fact that appellant had appellees' note given for the machine and had paid full value therefor; that appellees could buy another machine if they wanted to do so, but that appellant was going to look to them for the payment of the balance owing on the note. The third letter was dated April 3, 1925, and was in answer to one from appellees dated April 1, 1925, informing appellant they had purchased another machine and were going to remove the one which had been purchased from the refrigerator company. In this letter, appellant ac-

knowledged receipt of appellees' letter, and stated that appellant held "note and chattel mortgage" on machine, and that appellant again desired to advise appellees that it had purchased the note in question for full value without notice of any defect in the machine, and which was pledged as security for the note, and that, unless appellees continued to make the payments on the note, appellant would enter suit to enforce collection, and that the main company at Zanesville stood ready to furnish any service required on appellee's machine.

This witness, testifying in rebuttal for appellant, said he severed his connection with appellant company in October, 1925 (when testifying for appellees he said he severed his connection in October, 1927); that he carried on the negotiations for the purchase of the note by appellant; that no other person had anything to do with that purchase; that the note was mailed from the Zanesville company to appellant; that appellant paid full value for the note, and that it had no notice of any defense to the note, and knew nothing about the contract between appellees and the refrigerator company; that in one of the letters which had been read in evidence, there was some reference to a chattel mortgage, but that there was no such mortgage, and that appellant never got anything except the note.

One or two other witnesses testified for appellees to the effect that the machine for which the note was given was defective and did not comply with the guaranty in the contract of purchase, nor with the representations and statements made by the seller in its effort to sell the machine to appellees.

The note was negotiable in form under the Negotiable Instrument Act. This being true, the burden was on appellees to prove want of consideration and knowledge of that fact by appellant at or prior to the time it purchased the note. *Wheat* v. *Goss*

(1923), 193 Ind. 558, 141 N. E. 311. While the evidence is sufficient to support a finding that the refrigerator was worthless and that there was no consideration for the note, there is no evidence to sustain a finding that appellant had any knowledge of that fact.

The judgment is based on the sixth paragraph of answer and on the cross-complaint. When, in an action on a negotiable instrument, fraud has been alleged as a defense, and has been proved, the burden is on the plaintiff to prove that he is a *bona fide* holder, and that he paid a valuable consideration for it. *Wheat* v. *Goss, supra; Nat. City Bank* v. *Kirk* (1922), 85 Ind. App. 120, 134 N. E. 772; *Bright Nat. Bank* v. *Hartman* (1915), 61 Ind. App. 440, 109 N. E. 846. Appellant is asking this court to say, as a matter of law, that it has discharged its burden of proving want of notice of fraud in the execution of the note.

While the witness Cameron testified that appellant had no notice or knowledge of any fraud, and that no one had anything to do with the purchase of the note except him, his testimony is such that the court may not have believed it in its entirety. We did not see nor hear the witness while he was testifying. There may have been something in his demeanor, and in some things he said, that had the effect of impeaching his testimony. If there were, the trial court was not bound to accept his testimony as being true without corroboration. The trial court found that appellant failed to discharge the burden of proving want of knowledge of the alleged fraud, and we cannot say, as a matter of law, that the court erred in so holding. See *Nat. City Bank* v. *Kirk, supra.*

Judgment affirmed.